*407
 
 Mr. Justice CLIFFORD
 

 delivered the. opinion of the cpurt.
 

 Subscriptions were made to the/Mississippi and Missouri Railrqad Company by certain municipal corporations through which the railroad was located, and the proper authorities of those municipalities issued their bonds in payment of such subscriptions to the stock Of the railroad company.
 

 Coupons were attached to the bonds providing for the payment of interest semi-annually, and the railroad company, as the immediate transferees of the bonds, guaranteed that ' the principal and interest of the bonds should be paid-as stipulated - by an instrument in writing on the ba'ck.of each bond, duly executed by the proper officers of tie railroad company.
 

 Obvious purpose -of that guaranty was to augment the credit of the bonds in the market, and to facilitate their-sale to capitalists to raise money to construct their railroad arid put- it in operation. Complainants became the lawful holders for value qf a large number of th'e’se bonds, and the' guarantors.as, well - as- the obligors neglecting and refusing to pay the coupons as the same fell due, they brought'separate suits against' those parties, and recovered j udgmenfs against them- respectively, ..as alleged in-the bill of complaint.-
 

 Executions were issued as well on the judgment against the obligors of the bonds, as on the judgment against the ■ guarantors of the sarde, and the return of the officer in each case was that .he found no property. Prior to the date of those judgments, the railroad company had executed several mortgages of their railroad to- secure the payment of théír bonds, issued at different times, to the-amount of seven millions of-dollars, and the compány had become insolvent, They had also become liable as guarantors of the municipal bonds already described, and others of like kind received, and used for the same purpose, to the amount of three hundred'thousand dollars, the payment of which was repudiated by the respective municipal! corporations, by whose officers the bonds were'issued.
 

 Unable to pay the debts’ of the company, the stockholders'
 
 *408
 
 of the same determined to sell their railroad. Arrangements 'were accordingly made between the stockholders and the' holders of the mortgage bonds to get up the stock of the' company through certain agents or trustees, and to execute and deliver to the several holders of those bonds and to the owners of the stock of the company,' certificates of the amounts that they respectively would be entitled to receive under a distribution of the consideration of the proposed sale': Amount of the consideration, as assumed in the arrangement, was five millions five hundred thousand dollars, and the terms of the arrangement were that the consideration should be distributed among the parties interested therein, according to a prescribed scale as set forth in the bill of complaint.
 

 By that scale of distribution sixteen per cent, of the amount, to wit, five hundred and'fifty-two thousand four hundred dollars were to be paid to the owners of the capital stock, but none of the stipulations in' the arrangement made any provision for the payment of the bonds or coupons belonging to the complainants. Authorized to carry the arrangement into effect, the proper agents of the company offered ito sell the entire property of the railroad .to the Chicago and Rock Island Railroad, and the latter company, on the first day of November, 1865, accepted the proposition, and the parties entered into written stipulations upon the subject.'
 

 ' Those proposing to sell agreed that they would, with all possible despatch, cause the nfortgages oh the .railroad to be foreclosed, and that the entire property of the company, real and personal, should be sold and conveyed to trustees, and that the same should be .transferred to such incorporated company in that State as the other contracting party should designate as the purchaser of the property, if such designation was made within the time therein prescribed.
 

 ■ By the terms of the agreement the Chicago and Rock Isl- and Railroad Company agreed to cause to' be incorporated in that State a company which should make the purchase, as proposed, for the sum of five million five hundred thousand dollars, and complete the railroad to the place therein men*
 
 *409
 
 tioned, and the other party , stipulated that the purchaser at the foreclosure s^le should convey the railroad tb the new company for that consideration. Pursuant to that agree-,, mentthe mortgages-,were -foreel-osedj and the new company, to wit, the Chicago, Rock Island, and Pacific Railroad Com-pany,-was,created under the genéral laws, of the State, and' the entire property of the railroad was sold at the foreclosure sale, and the purchasers ebnveyed the same to the mew pbmpany as stipulated in the agreement. All the-stockholders in the old company became thereby entitled, as against all those who joined with them in negotiating the sale,
 
 to afino
 
 rate-share in the sixteen per cent. of the Consideration ré-; served to their use under the scale of distribution prescribed' in that arrangement,
 

 . Statement of the bill of: complaint' is, that 'the -new company is ready to pay that amount tb the stockholders of -the ,old company, and the-complainants contend that the facts' herein recited show that they are entitled to have their whole debt paid before any portion of the fund derived fr,om that sale shall go to the stockholders of the old company,, which is insolvent, and will become extinct when that arrangement is fully carried into effect.,
 

 Views of the complainants were sustained in the court below, where- it was ordered,'adjudged, and decreed,'that' the complainants and- the other parties who wer$ duly admitted as such, and joined in the prosecution of'the- suit,were .entitled, as creditors of the railroad company, tb so much of the purchase-money as was agreed between the parties, and intended to be reserved and distributed among the stockholders of the company, and 'from that decree, as. more fully set forth in the record, the respondents-appealed,
 

 -. I. Equity regards-the property of a corporation as held in trust for the payment of the debts of the corporation,’ and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it’ has passed - into, the' hands of a
 
 bond fide
 
 purchaser; and^the -rule is well settled that stockholders, are not entitled to any share of the
 
 *410
 
 ■capital stock nor to any dividend of the profits until all the debts of the corporation are paid.
 

 Assets derived from the sale of the capital stock of the corporation, or of its property, become, as respects creditors, the substitutes for the things sold, and. as such they are subject to,the same liabilities and Restrictions as-the things sold were before the sale, and while they remained in the possession of the corporation. Even the sale of the entire capital 'Stock of the compány and the division of,the. proceeds of the sale among the stockholders will not defeat the trust nor impair the remedy of the creditors, if any debts remain unpaid, 'as .the creditors in that event may pursue .the consideration of the sale in the h,ands of the respective stockholders, and compel each one, to the extent of the fund, to contribute
 
 pro rata
 
 towards the payment of their debts out of the moneys so received andrin t,heir hands.
 

 , Valid contracts made by a corporation survivé even its dis-, solution by voluntary surrender or sale of its corporate franchises,- and the creditors of the corporation, notwithstanding' such, surrender or sale, may still enforce their' claims against the property of the corporation as if no such surrender or sale had taken place. Moneys derived from the sale and transfer of the franchises and capital stock of an incorporated company are assets of the corporation, and as such constitute a fund for the payment of its debts, and if held by the corporation itself, and so invested as to be subject to legal process, the fund may be levied on by such process; but if the fund has been distributed among the stockholders, or passed into the hands of other than
 
 bond fide
 
 creditors or purchasers, leaving any debts of the corporation unpaid, the established rule in equity is, that such holders take the fund charged with the trust in favor of creditors, wrhich a court of equity will enforce, and compel the application of the same, to the satisfaction- of their debts.
 
 *
 

 
 *411
 
 ' Regarded as the trustee of the corporate fund, the corporation is bound to administer the same in good faith for the benefit of creditors and stockholders, and all others interested in its pecuniary affairs, and any Qne receiving any portion of the fund by voluntary transfer, or without consideration, may be compelled to account to those for whose use the fund is held. Creditors are preferred to stockholders on account of the peculiar trust in their favor, and 'because the latter, as constituent members of the corporate body, are regarded as sustaining, in that aspect, the same relation to the former as that sustained by the corporation.
 

 None of these principles are directly controverted by the appellants; but they deny that the sixteen per cent, agreed to be paid to the stockholders belonged to the corppration. ■
 

 Claim of the complainants to the fund in controversy rests mainly upon two propositions, which present mixed questions of law and fact:
 

 1. That they are creditors of the' railroad company, as evidenced by the judgments set forth in the record.
 

 2. That the fund in question was assets 'of the railroad company.
 

 ■ , Authority of the municipal corporations to issue the bonds, purchased by the complainants is not denied; but the appellants contend that the railroad company had no power to guarantee their payment, and they also deny that the railroad'eompany had any title or interest in the fund in controversy. On the contrary, they insist that it was a eonces-, sion made by the holders of the mortgage bonds to the' stockholders as á “gratuitous favor” to save them from a total loss, and to induce them not to interpose any obstacles in the way of a speedy foreclosure of the several mortgages;
 

 Express allegation of the bill of complaint is; that the' bonds issued.by the- municipal, corporations were received by the railroad company in .payment for.subscriptions to the stock of'the company, and thát the corporation,--as the- • holders of the same, guaranteed' their payment, and sold
 
 *412
 
 them in the market, and the stipulation of the parties is, that all the allegations of the bill of complaint not denied in • the answer are to be considered as admitted. Apart, therefore,- from the effect of the judgments, those allegations must be taken to- be true, as they were not denied in, the answer.
 

 Power to .make contract's, and acquire and transfer property,, is conferred upon such corporations, by the laws of the .State, to .the same extent as that enjoyed by individuals; and’the record shows, to the-entire satisfaction of the court,' that the, instrument of guaranty was executed and the bonds . sold in the market as the means of raising money to construct the railroad and put it in operation.
 

 ■ Counties and cities ■ may issue bonds under the laws of that'State in aid of such improvements; and railway companies are expressly authorized to receive such securities in payment- of subscriptions to their capital stock, and to sell the bonds > in the market, ¿or. such, discount as they think propefr.
 

 Abundant proof exists in this record, that railway companies may issue- their own bonds to raise monéy to carry ’ into effect the purposes for which they were created; and it is- difficult to see why. they may not guarantee the payment of such bonds as . they have lawfully received from cities and counties,--and put them upon the market instead, of their’ own, as the means of accomplishing the same end. Undoubtedly they may receive such bonds under the laws ó¿ the State, and if they may receive them, they may-transfer them to others; and if they may transfer them to purchasers, they may, if they deem it expedient, guarantee their payment as the means of augmenting -their credit in the market, and saving the corporation from the necessity of issuing their own bonds to accomplish the same purpose.
 

 ‘Considered, therefore,, as an open question, the court is of the opinion that the objection is without merit. Private corporations may borrow money, or become parties to negotiable paper in the transaction of their legitimate business, unless expressly
 
 prohibited;
 
 and until the contrary is shown,
 
 *413
 
 the legal presumption is that théir acts in that behalf-were -done in the regular course of their authorized business.
 
 *
 

 Railroad companies are responsible in their corporate capacity for - acts done- by their agents, either
 
 ex contractu
 
 or
 
 ex delicto,
 
 in the course of-their business and within the scope of the agent’s authority.
 
 †
 

 Corporations as-much as individuals are-bound to good faith and fair dealing, and the rule is well settled that they cannot, by their acts,- representations, or silence, involvé others-in onerous engagements and then turn round and -disavow their acts and defeat the just expectations which, their own conduct has superinduced.
 
 ‡
 

 Tested by any view of the evidence, it is quite clear that the corporation possessed the power to execute the instruments of guaranty appearing on the back of the bonds', and the necessary consequence of that conclusion is that'on the default of payment they became liable to the holders 'of the same to the same extent as the obligors.
 

 Present suit -is not one against stockholders to compel' them to pay a corporate debt out of their own. estate, but it is a' suit against the corporation and certain other parties holding or claiming assets which belong to the principal respondent, to prevent that fund from being distributed among the stockholders of the corporation before the debts due to the. complainants are paid. Viewed in that light, it is,obvious that the stockholders are precluded by the judgment from denying the validity of the instruments of guaranty, and'that the judgments are conclusive as to the indebtedness-of the corporation.
 

 II. Second defence is that the fund in question did not belong to the corporation, as contended by the appellees.
 
 *414
 
 Extended discussion- of. that proposition is .not necessary, as-the evidence in the record affords the means of demonstration that it is not correct. Mortgage bondholders had a lien upon the,property of the corporation embraced.in their mortgages, and the corporation having neglected and refused to, pay the -bonds,’ they had a right to institute proceedings to' foreclose the mortgages, but the equity of redemption remained in the corporation. Subject to their lien, the property of the railroad was in the mortgagors, and whatever interest reipained after the lien of the mortgages was discharged belonged to the corporation, and as the. property of the corporation when the bonds were discharged;.it became a fqnd ' in trust for the benefit of their creditors. Holders of bonds - secured by mortgage as in this case, may exact the whole amount of the bonds, principal and interest, or they may, if they' see' fit, accept a percentage as a compromise in full discharge of their respective claims, but -whenever their lien is legally discharged, the property embraced in the mortgage, or whatever remains of it, belongs to the corporation. .
 

 Conceded fact is that the property and franchises of the railroad were sold for the consideration specified, in- the •record, and that the mortgage bondholders discharged their lien for eighty-four per -cent, of .that amount, and that the residue of the purchase-money Remained in the hands of the purchaser, discharged of the lien created by the mortgages, and the complainants contend that it was cléar of all liens, except that of the creditors. Such a corporation cannot be said fo, own anything separate from thé stockholders, unless. -it be the tangible property of the company and the franchises conferred -by the charter,-and it is conceded by both parties that the fund in question ivas derived from a voluntary sale and transfer of those identical interests. Th,ey were heavily iueumbered by mortgages, and our attention is called to the fact that’the provisional arrangement was negotiated by the stockholders and 'bondholders ; «but the decisive answer to that, suggestion is,'that the two railroad companies were parties tp the-subsequent contract of sale, and that they both agrppd to all the terms of sale and purchase, and, to the mode
 
 *415
 
 of transferring and of perfecting.the'title. Prompt' payment was secured by the bondholders, and it is highly probable that they received under that arrangement a larger portion of their claims than they could have obtained'in any other way.
 

 Another suggestion of the appellants is th " the contract of sale was unauthorized, hut the suggestion is entitled to no weight, as the'contract was ultimately carried into effect,by the consent or subsequent ratification of all parties interested in the subject-matter of the sale.
 

 Next objection is that there is such a, want of parties that a court of equity cannot grant the relief as prayed. Principal suggestion in support of this proposition is that the stockholders should have been made parties, hut the court is of a different opinion, because their interest is fully represented by the parties before the Court. Respondents in the suit are ■.the two railroad companies and the committee or trustees chosen and appointed by the stockholders and bondholders through whom ■ the provisional arrangement was perfected and the Contract of sale ivas carried into effect. Neither the stockholders nor bondholders were necessary parties under the circumstances of this case.
 
 *
 

 Remaining objection is, that the certificates issued-to the stockholders in lieu of their stock, were negotiable, and' that they may be i» the hands of innocent holders; but the objection is entitled to no weight, because it is based upon an erroneous theory.
 

 Written contracts are not necessarily negotiable simply because by their terms they enure to the benefit of the bearer. Doubtless the certificates were assignable; and they would have been so if the word bearer had been omitted, but they were not negotiable instruments in the sense supposed by the appellants. Holders might transfer them, but the as
 
 *416
 
 signees.took them subject' to every equity In the hands of the original owner.
 
 *
 

 • Particular mention is not made of the defence that the complainants have an adequate remedy at law, as it is utterly-destitute of merit.
 

 Decree affirmed.
 

 *
 

 Story’s Equity Jurisprudence (9th ed.), § 1252; Mumma
 
 v.
 
 Potomac Company, 8 Peters, 286; Wood v. Dummer, 3 Mason, 308; Vose v. Grant, 15 Massachusetts, 522; Spear
 
 v.
 
 Grant, 16 Massachusetts, 14; Curran
 
 v.
 
 Arkansas, 15 Howard, 307.
 

 *
 

 Canal Company v. Vallette, 21 Howard, 424; Partridge
 
 v.
 
 Badger, 25 Barbour, 146; Barry
 
 v.
 
 Mer. Ex. Co., 1 Sandford’s Ch. 280; Angell and Ames on Corporations, § 257; Story on Bills, § 79; Farnum
 
 v.
 
 Blackstone Canal, 1 Sumner, 46.
 

 †
 

 Railroad Co.
 
 v.
 
 Quigley, 21 Howard, 202.
 

 ‡
 

 Bargate
 
 v.
 
 Shortridge, 5 House of Lords’ Cases, 297; Zabriskie
 
 v.
 
 Railroad, 23 Howard, 397; Bissell
 
 v.
 
 Jeffersonville, 24 Id. 300.
 

 *
 

 Bagshaw
 
 v.
 
 Railway Co., 7 Hare, 131; Holyoke Bank v. Manufacturing Co., 9 Cushing, 576; Hall
 
 v.
 
 Railroad,
 
 21
 
 Law Reporter, 138; 1 Redfield on Railways, 578; Boon
 
 v.
 
 Chiles, 8 Peters, 532; Story
 
 v.
 
 Livingston, 13 Id. 359.
 

 *
 

 Mechanics’ Bank
 
 v.
 
 Railroad Co., 13 New York, 599.