HANCOCK *v.* TOLEDO, PEORIA & WARSAW R. Co.

(*District Court N. D. Illinois.* January 4, 1882.)

1. RAILROADS—REORGANIZATION—BILL BY CREDITOR.

Where an agreement was entered into between the holders of the mortgage bonds and other creditors of a railroad corporation, after proceedings had been instituted and were pending for the foreclosure of the mortgage liens on its property, whereby provision was made for the appointment of a committee, who were to obtain a decree of foreclosure in the pending suit and purchase the railroad, its rights, privileges, franchises, and property for all the holders of bonds, stocks, and indebtedness of the old company, at the foreclosure sale; for the incorporation of a new company; for the delivery, by the holders, of the bonds, indebtedness, and stock of the company to a third party, subject to the order of the committee; for the conveyance by the committee of its purchase to the new corporation, who should mortgage the same by giving first and second mortgages to secure the issue of a large amount of bonds, and who should issue stock; for giving (1) to the holders of the mortgage bonds of the old company, in place of their old securities, the new bonds, secured by the

two mortgages, at rates fixed by the agreement; (2) to the holders of the floating debt of the old company, in place of their surrendered evidences of indebtedness, second preferred income bonds of the new company at par (these bonds being secured by the second mortgage) to the full amount of their respective debts and interest; (3) to the holders of the first preferred, the second preferred, and the common stock of the old company, when surrendered, stock in the new company to the amount, respectively, of 50 per cent., 30 per cent., and 25 per cent., of the stock of the old company which they had owned: *held*, that a bill by a holder of a part of the floating debt of the old company, charging that this plan of reorganization is fraudulent as against the creditors of the old company, and seeking to have the stock of the new company, provided in the agreement to be issued to the stockholders of the old company, placed in the hands of a receiver and sold, and the proceeds applied to the payment of the plaintiff and such other creditors as should come in and be made parties, will be dismissed for want of equity, on the ground that the plan has a due regard for the interests of all classes of creditors and stockholders, and the bill fails to show that any injustice was intended or has been done to this creditor.

In Equity.

*John Gibbons*, for complainant.

*Lyman & Jackson*, for defendant.

BLODGETT, D. J. This is a bill filed by Jonathan Hancock, as a judgment creditor of the Toledo, Peoria & Warsaw Railroad Company, in behalf of himself and all other creditors of that company, against said company, and Morris K. Jessup, Robert C. Martin, Charles E. Whitehead, William L. Putnam, and Henry Hill, a committee of the creditors of said company. The bill, in substance, charges that complainant, on the twenty-third of November, 1875, recovered in the circuit court of Peoria county, in this state, a judgment against the Toledo, Peoria & Warsaw Railroad Company for $3,835.35; that the railroad of the Toledo, Peoria & Warsaw Railroad Company was heavily encumbered with mortgages and other liens, and that proceedings had been instituted and were pending for the foreclosure of the mortgage liens on the property, and that the property was in the hands of a receiver, appointed by this court under such foreclosure proceedings; that pending these foreclosure proceedings, and on or about the thirteenth day of June, 1877, an agreement was entered into between the holders of the mortgage bonds and other creditors of the corporation, whereby it was provided that defendants Jessup, Martin, Whitehead, Putnam, and Hill should be appointed a purchasing committee; that such committee should obtain a decree of foreclosure in the suit then pending, under which all and singular the railroad, rights, privileges, franchises, and property of the company should be sold, and the same should be purchased at such sale by the committee, for and in behalf of all the holders of bonds, stocks, and indebtedness of the com-

pany; that a new corporation should be organized, under the laws of the state of Illinois, to own, operate, and control such railroad franchises and property, which should bear the name of the Toledo, Peoria & Western Railroad Company; that the holders of the bonds, indebtedness, and stock of the old company should deliver the same to the Farmers' Loan & Trust Company of New York, subject to the order of the committee; that the committee should convey the title to the railroad, its franchises, and appurtenances, so purchased by them, to the new corporation, and the new corporation should make a mortgage on the same to secure 4,500 bonds of $1,000 each. Also a second mortgage to secure $3,900,000,—$2,900,000 of which should be called "*first preferred income bonds*," to be issued in sums of $1,000 each; $1,000,000 of said bonds to be called "*second preferred income bonds*," to be issued in sums of $1,000 each; and that the new corporation should also issue 30,000 shares of stock, of the par value of $100 per share, making a total of $3,000,000 stock; that the holders of the mortgage bonds of the old company should receive in place of their old securities the new bonds, secured by the first and second mortgages, at certain rates fixed by the agreement; that the holders of the floating debt of the old company (which means, we assume, the unsecured indebtedness of this company, including this complainant) should receive, on surrender of their evidences of indebtedness, "*second preferred income bonds*" of the new company at par, to the full amount of their respective debts and interest; that the holders of the first preferred stock of the old company should receive, on the surrender of the stock certificates to the committee, stock of the new company to the amount of 50 per cent. of their old stock. Holders of the second preferred stock should receive stock of the new company to the amount of 30 per cent. of the old stock, and holders of the common stock of the old company should receive 25 per cent. in stock of the new company.

In his original bill, complainant stated the substance of this agreement in a very meager and imperfect manner, because, as he charged, the agreement was in the hands of defendants, and he was unable to procure a copy. He has since obtained a copy of the agreement, and filed an amendment to his bill, with a copy of said agreement, so that the agreement itself is now before the court for construction. The bill charges that this scheme or plan of reorganization is fraudulent as against the creditors of the old company, and seeks to have the stock of the new company, provided in the agreement to be issued to the stockholders of the old company, placed in the hands of a receiver and sold, and the proceeds applied to the payment of complain-

ant's judgment, and that of such other creditors as shall come in and be made parties thereto.

The solicitor for complainant insists that he makes just such a case here as was shown in *Railroad Co.* v. *Howard*, 7 Wall. 392. That case involved a contract made under circumstances similar to this, between the bondholders and stockholders of the Mississippi & Missouri Railroad Company of Iowa, whereby the road of the company was to be sold under a decree of foreclosure to be procured, and bid in by a committee for a fixed sum, $5,500,000, which was to be distributed among the bondholders and stockholders in such proportions that the stockholders should receive 16 per cent. of the par value of their stock, either in money or bonds. This agreement was attacked by the holders of certain unsecured indebtedness of the company, on the ground that it was fraudulent as against them.

The supreme court held that plan of reorganization void as against the unsecured creditors, because it made no provision for the payment of the unsecured creditors, saying:

" Mortgage bondholders had a lien upon the property of the corporation embraced in their mortgages, and the corporation having neglected or refused to pay the bonds, they had a right to institute proceedings to foreclose the mortgages, but the equity of redemption remained in the corporation. Subject to their lien, the property of the railroad was in the mortgagors, and whatever interest remained after the lien of the mortgages was discharged belonged to the corporation; and as the property of the corporation when the bonds were discharged, it became a fund in trust for the benefit of their creditors. Holders of bonds secured by mortgage, as in this case, may exact the whole amount of the bonds, principal and interest, or they may, if they see fit, accept a percentage as a compromise in full discharge of their respective claims; but whenever their lien is legally discharged, the property embraced in the mortgage, or whatever remains of it, belongs to the corporation."

It will be seen that while the Mississippi & Missouri Railroad Company was largely indebted to certain unsecured creditors, no provision was made under the scheme of reorganization for any payment or security to the unsecured creditors. The plan contemplated a complete absorption into the purchasing committee, or their successors, of the entire property of the company, free from all liens and liability for the debts of the old company, but in no manner contemplated that the holders of unsecured indebtedness were to be paid in full or in part, or in anywise provided for; while the stockholders, who only in equity held their interest, subject to the debts of the company, were to have about $550,000 divided among them.

Here, however, express provision is made for the holders of all the

'floating debt by giving them, in lieu of and substitution for their evidences of debt against the old company, second preferred income bonds of the new company equal to the amount of such floating debt and interest. This income bond is, by the terms of agreement, a higher grade of security than the stock of the old company; that is, the stockholders get no dividend until the interest on these bonds is all paid. The stockholders are placed behind the holders of these bonds, and the plan seems to fairly contemplate the protection of all classes of creditors of the old company in the equitable order of their priority. It was the evident purpose of the parties to this agreement to place these floating-debt holders in at least as good a relation to the new company as they bore to the old company. They got for their unsecured indebtedness something which at least bears the semblance of a security. It was a second-mortgage bond. No complaint is made of anything inequitable in the provision by which the holders of the mortgage debt should be paid in full in the manner provided in the agreement; nor is there any suggestion that there was any fraudulent collusion between the bondholders and stockholders to defraud the unsecured creditors.

It would seem almost obvious, from a statement of the amount of bonded and unsecured indebtedness of this old company, that it could not have been anticipated that this railroad property would or could have been sold for cash; or, if a cash sale had been insisted upon, it would only have partly paid the holders of the first-mortgage bonds. The plan adopted had what seems to have been a due and equitable regard for the interests of all classes of creditors and stockholders, and it does not seem that upon the statements in this bill any injustice was intended or has been done to this creditor. He undoubtedly has been offered much more than he could have got had the holders of the secured indebtedness insisted upon their full payment, as they would seem to have had the right to do. If this bill had shown that this creditor had accepted the provision made for him under the scheme or plan of reorganization, or had accepted the income bonds he was entitled to receive, and there was still a balance of his debt left unliquidated, he might, under the authority of the case which has been referred to, have had a right to call upon the stockholders to surrender the stock which it was provided they should receive as a part of this scheme. But it is not necessary to discuss that; and I refer to it only for the purpose of showing that he makes no such statement. He does not show he has accepted the provision which was made for him, and has come into the scheme for the purpose of

obtaining payment, as the other creditors of this corporation did, and as he might have done. If he had exhausted his remedy he might have had a different standing with reference to the stockholders. It is true, the contract provides that all those who come into this scheme shall contribute ratably to the expenses necessary to complete this plan of reorganization. This does not seem inequitable, but on the contrary just and equitable between the parties. All classes of the creditors of this company seem involved in a common misfortune, and it seems to me but right that they should share in the expenses of a plan which had for its purpose the benefit of all.

The bill is therefore dismissed for want of equity.