FARMERS' LOAN & TRUST CO. *v.* MISSOURI, I. & N. RY. CO.

LEE and others *v.* FARMERS' LOAN & TRUST CO. and others.

*(Circuit Court, S. D. Iowa, E. D.* June Term, 1884.,

1. CORPORATIONS — PROPERTY OF INSOLVENT CORPORATION — HOW TREATED IN EQUITY.

While the property of an insolvent corporation is to be treated in equity as a trust fund primarily for the payment of its debts, lien creditors have no greater equity to payment out of such fund than general creditors. As both sets of creditors have contributed to the extent of their respective debts to the assets of the insolvent, in strict justice they should share *pro rata* in the assets.

2. SAME — PRIORITY OF PAYMENT — SECURED CREDITORS — EQUITABLE LIEN OF UNSECURED CREDITORS.

The secured creditor is ordinarily entitled to priority of payment, because, with equal equity, he has a legal lien which equity will recognize and enforce; but when the unsecured creditor has some peculiar and superior equity, the court may establish his debt as an equitable lien upon the property paramount to the secured debt.

3. SAME — RIGHTS OF STOCKHOLDERS — DISPOSITION OF FUND BY SECURED CREDITORS — PROTECTION OF UNSECURED CREDITORS.

The claims of unsecured creditors are in equity always superior to those of the stockholders in the distribution of the trust fund. Nor will the secured creditors, after bringing the trust property within the jurisdiction of the court, be permitted, by any private arrangement with the common debtor or otherwise, so to dispose of the property as to seriously and unnecessarily prejudice the claims of the secured creditors. They will not be allowed for their own benefit, or for the common interest of themselves and the debtor, to place the surplus which may exist after the satisfaction of their own claims beyond the reach of the unsecured creditors; nor will they be permitted, beyond what is needful for their own complete security and indemnity, to hinder or delay the general or unsecured creditors.

4. SAME—INTERVENTION — PARTICIPATION IN TRUST FUND—JUDGMENT AT LAW.
  It is not necessary to the right of intervention, to participate in a trust fund *in custodia legis*, that the intervenor should first obtain judgment at law, or that he should have any lien upon the fund.

5. SAME — RAILROAD MORTGAGE — FORECLOSURE — CONSENT ORDER — LEASE OF PROPERTY—LIEN OF UNSECURED CREDITORS ESTABLISHED.
  Complainants obtained a decree to foreclose a mortgage executed on all of its property by the Missouri, Iowa & Nebraska Railway Company to secure its bonds, but instead of making a sale of the property entered into an arrangement among themselves, with the consent of all parties in interest, by which the entire property was transferred by a perpetual lease to the Wabash, St. Louis & Pacific Railway Company, that stipulated to pay to a receiver provided for in the order of the court made under such arrangement, as rental, 30 per cent. of the gross earnings of the insolvent road which might accrue from lessee's operation thereof, to be applied by him in payment of the interest on the bonds issued by the lessee company and accepted in lieu of the bonds of the lessor company, and secured by mortgage on the whole property of the lessor company, after payment of taxes, any surplus to be paid to the lessor company; thus making no provision for payment of the floating debt of the insolvent corporation. The holders of certain unsecured notes given in liquidation of a debt growing out of the construction of a part of the insolvent's road, and to prevent a lien thereon, intervened after the foreclosure decree and prayed to have their debts established as equitable liens upon the property and funds of the insolvent road paramount to the lien of the mortgage. *Held*, that they were entitled to relief as prayed.

In these proceedings the original bill and cross-bill were filed to foreclose a railway mortgage of the Missouri, Iowa & Nebraska Railway Company to the Farmers' Loan & Trust Company, to secure the bonds of the former company. Said mortgage covered the entire property of the said Missouri, Iowa & Nebraska Company. The intervenors came in by leave of the court after the decree of foreclosure had been entered, to assert by petition their claim to have their debts against the Missouri, Iowa & Nebraska Railway Company established as equitable liens upon the property and funds of the defendant railway company paramount to the lien of the mortgage.

The cause is now before the court for hearing, upon exceptions to the master's report upon the intervening petitions, which were referred to him by an interlocutory order. The facts appearing by the evidence and found by the master, so far as they are material to the present hearing, and so far as they are not fully stated in the opinion of the court, are as follows:

*First.* That the complainants, on the twenty-second day of October, 1880, obtained a decree in this court in the foreclosure proceedings, and that, instead of executing the same in the ordinary course by a sale of the mortgaged property, they, without any sale under the decree, entered into arrangements among themselves, all parties in interest consenting, by which the entire railway property of the defendant company was transferred, by a perpetual lease, to the Wabash, St. Louis & Pacific Railway Company; that said last-named company stipulated and agreed to pay as rental 30 per cent. of the gross earnings which might accrue from their operation of the road in the manner and for purposes fully stated in the opinion of the court. In and by said arrangement it was further stipulated and agreed that the bondholders of the defendant railway company should surrender for cancellation the bonds of said company, and accept, in lieu of the same, new coupon bonds to

be issued by said Wabash Company, bearing interest, payable semi-annually, and secured by a new mortgage, to be executed by said Missouri, Iowa & Nebraska Railway Company, upon its entire railway property, transferred, as aforesaid, to said Wabash Company, all of which was accordingly done; that said Wabash Company, in order to provide for the payment of the floating debt of said Missouri, Iowa & Nebraska Railway Company, which, by the transfer of its property, was left wholly without means to pay the same, in consideration of valuable concessions by said defendant company and the bondholders, stipulated and agreed to pay the said floating debt of said Missouri, Iowa & Nebraska Company in the manner and by the means fully shown in the opinion of the court; that in order to carry into effect the arrangement so agreed upon, and to provide for the payment of said floating debt, all the parties to the arrangement,—the bondholders consenting,—immediately upon obtaining said decree of foreclosure, obtained from this court a consent decree, fully stated in the opinion of the court, providing, among other things, for the appointment of a receiver, to whom the said Wabash Company was to pay said 30 per cent. rental monthly, to be applied by the receiver, under the orders of the court, to the payment of said floating debt.

All other material facts will fully appear in the opinion of the court.

The intervenor the Chase National Bank is one of the so-called floating creditors of the said defendant railway company, and is now the holder of two negotiable promissory notes executed by the defendant company, dated August 13, 1878; one for the sum of $2,000, the other for the sum of $2,500, with interest from date. Said notes were given in a settlement with the payee, and for the purpose of liquidating a debt of said railway company, growing out of the construction of the first 90 miles of their railroad in 1871 and 1873 by the payee; the main purpose of said settlement being to free said railway property from any possibility of a lien thereon in favor of said payee prior to that of the bonds secured by the mortgage of said railway company. The intervenor Henry Hill is also the owner and holder of two like notes; one for $2,000, the other for $2,500, with interest, amounting to the sum of $6,192.13.

*Hagerman, McCrary & Hagerman,* for intervenors.

*Felix Hughes, contra,* for complainants.

LOVE, J. The claims of these so-called floating creditors stand in my judgment upon peculiar ground. The property of a corporation is to be treated in equity as a trust fund primarily for the payment of its debts. This doctrine has been so often propounded by the courts that it is unnecessary to cite authorities to sustain it. See *Railroad Co.* v. *Howard,* 7 Wall. 409, 410, 414. And this trust is to be administered by no means solely for the benefit of the lien creditors. Lien creditors have no greater equity to payment out of the effects of an insolvent corporation than general creditors. Both classes of creditors have contributed to the extent of their respective debts to the assets of the insolvent, and in strict justice they should share *pro rata* in the assets. Indeed, it is not unfrequently the case that the unsecured creditor has in equity claims superior to the lien creditor upon the estate of the insolvent. The secured creditor is

ordinarily entitled to priority of payment, because with equal equity he has a legal lien which equity will recognize and enforce. But there are cases in which a court of equity postpones a lien creditor to an unsecured creditor having some peculiar and superior equity. In these cases the court establishes the floating debt as an equitable lien upon the property paramount to the secured debt. *Fosdick* v. *Schall,* 99 U. S. 235–252; *Burnham* v. *Bowen,* 111 U. S. 776; S. C. 4 Sup. Ct. Rep. 675.

The court, treating the property of an insolvent corporation as a trust fund, will not ignore the rights and interests of the unsecured creditors. Their claims are in equity always superior to those of the stockholders in the distribution of the trust fund. Nor will the secured creditors, after bringing the trust property within the jurisdiction of a court of equity, be permitted, by any private arrangement with the common debtor or otherwise, so to dispose of the property as to seriously and unnecessarily prejudice the claims of the unsecured creditors. The lien creditors will not be allowed for their own benefit, or for the common interest of themselves and the debtor, to place the surplus which may exist after the satisfaction of their own claims beyond the reach of the unsecured creditors. *Railroad Co.* v. *Howard,* 7 Wall. 392; *In re Howard,* 9 Wall. 175. Beyond what is needful for their own complete security and indemnity, the secured creditors will not be permitted to hinder or delay the general or unsecured creditors.

Keeping these principles distinctly in view, let us proceed to consider what the secured creditors, in conjunction with the common debtor, attempted to accomplish in the present case. The bondholders of the Missouri, Iowa & Nebraska Railway Company, through their proper trustees, brought their mortgage here for foreclosure. They obtained from this court a decree of foreclosure, but they purposely dispensed with a sale of the property. The property was thus placed within the jurisdiction of the court. The parties to the suit then, by an arrangement among themselves, and with a view exclusively to their own interest, took measures to dispense with a sale, and so to dispose of the property as to place any surplus which might have arisen from a sale entirely beyond the reach of the unsecured creditors. Suppose there had been a judicial sale of the railroad company's property in the regular course of proceeding, who can say that there would not have been a surplus over and above what would have been sufficient to pay the secured creditors? It will not do to say that there would have been no surplus fund from the sale of the mortgaged property. This no one has any warrant judicially to affirm. The presumption is that the property would have produced a greater sum than the mortgage debt, since capitalists are not apt to receive property as security without a large margin of value over and above the sum secured. And if such surplus had arisen, it would, undoubtedly, have been a trust fund *in custodia legis,* to be distributed

among the unsecured creditors. It would certainly have been competent for the court to allow all creditors, with or without liens, to intervene in the suit and claim satisfaction out of a trust fund held primarily for their benefit. The court surely would not have permitted its officers, in the face of the unsecured creditors praying for relief, to pay over such a surplus fund to the insolvent corporation or its stockholders. See *In re Howard*, 9 Wall. 184.

What was the arrangement to the prejudice of the general creditors by which the bondholders, the defendant railroad company, and the Wabash, St. Louis & Pacific Railway Company attempted to place the property of the debtor corporation beyond the reach of the unsecured creditors? Without going into details, the scheme, as consummated pending the suit, was, in brief, that the debtor company should, by a perpetual lease, transfer the whole of its property to the Wabash, St. Louis & Pacific Company; that the last-named company should pay a rental of 30 per cent. of the gross earnings derived from their operation of the road, and apply the same as hereinafter stated; that the bondholders of the Missouri, Iowa & Nebraska road should receive in exchange the bonds and stock of the Wabash road for the bonds of the Missouri, Iowa & Nebraska road, and that they should deliver up the old bonds to be canceled; that the Missouri, Iowa & Nebraska Railroad Company should execute a new mortgage to trustees upon their railway property, to secure the payment, interest and principal, of the Wabash bonds. The Wabash Company, on its part, in consideration of valuable concessions of both the bondholders and the Missouri, Iowa & Nebraska Company, agreed to pay the floating debt of the Missouri, Iowa & Nebraska Company. It was also stipulated that the Wabash Company should have the right to apply the 30 per cent. rental to the payment of the semi-annual interest upon its own bonds, and the taxes upon the property. Any balance of the 30 per cent. rental was to be paid by the Wabash to the lessor.

By this arrangement the bondholders obtained a new and, as they supposed, unquestionable security for their debt. The Wabash Company, whose bonds they received, was supposed to be entirely solvent. The stockholders of the Missouri, Iowa & Nebraska were also provided for, since it was reasonably certain that under the management of the great and powerful Wabash Company the earnings and value of the road would be greatly increased, and the stock enhanced in value. Thus the entire property of the Missouri, Iowa & Nebraska Railroad Company was disposed of to the Wabash Company for the benefit of its bond and stock holders, leaving the debtor company without any means whatever for the payment of its floating debt.

It is evident that the parties to this arrangement, who were also parties to the foreclosure suit, recognized the fact that while all of the property of the Missouri, Iowa & Nebraska Railroad Company was thus transferred, leaving that company without any means what-

ever to pay debts, no provision was thus far made for the security of the floating creditors.    This is made evident by the petition presented to this court by the trustees in the mortgage, (complainants in the foreclosure suit,) and the order they obtained after the signing of the decree of foreclosure at the October term, 1880.    The complainant trustees, after the signing of the decree of foreclosure, presented their petition to the court, upon the showing of which, and with the consent of all parties, including the bondholders, the court made the following order.

"That, upon the petition of the complainant, setting forth that the defendant corporation has leased its line of railway property and franchises to the Wabash, St. Louis & Pacific Railway Company, and that the Wabash, St. Louis & Pacific Railroad Company has been in possession of said leased property, using and operating the same, since October 1, 1880, and has been and is in the receipt of the entire incomes, tolls, and earnings of said railway, under said contract of lease; that said railway company has no funds wherewith to pay debts, except the rent reserved in said lease, and that said debts are or may become liens against its railway property paramount to said first mortgage lien; that all parties, namely, the bondholders, by counsel or in their own proper persons, the Missouri, Iowa & Nebraska and the Wabash Companies, and the mortgage trustees appearing and consenting, the court orders and decrees:    (1) That James Fitz Henry be appointed receiver of the rent reserved to the Missouri, Iowa & Nebraska Railroad Company, under the terms of said lease, to a sum equal to 30 per cent. of the gross income derived from the operation of the Missouri, Iowa & Nebraska Railroad; (2) that the Wabash Company be and is required, in lieu of the payments required by the lease, to pay to said Fitz Henry, receiver, monthly, on or before the fifteenth of each month, the full amount of 30 per cent. of the gross income aforesaid, said payments to commence on the fifteenth day of November, 1880, and to include the earnings of October, 1880, and so to continue from month to month till otherwise ordered by the court; (3) that out of the funds so received the receiver shall pay, under the order and direction and subject to the approval of the court, all taxes and assessments against said property, all claims and demands due by said Missouri, Iowa & Nebraska Railroad Company for labor and materials furnished to said railway company in its operation, and for supplies used in the operation and repairs of the road, while said Missouri, Iowa & Nebraska Company was in possession and operating the same, and all judgments for damages for stock killed and injured on said railway, which constitute a lien on said railway paramount to said mortgage bonds; (4) that the Wabash should make reports to the receiver monthly of its earnings, showing gross income, etc.; (5) that the receiver should give bond, etc.; (6) but this order shall be without prejudice to the right of any person interested to move for the appointment of a receiver of the property of said defendant railway company."

It is thus evident that the parties to the foreclosure suit aimed, by this consent order, to make provision for such floating debts as they assumed *might* become "liens against the railway paramount to the first mortgage lien."    They assumed to exclude all other floating debts, however just and meritorious.    For this purpose they provided for the appointment of a receiver, and the payment into his hands of the 30 per cent. fund.    The 30 per cent. fund was thus brought into court, and it is a trust fund which the court must dis-

pose of for the benefit of creditors according to equity and good conscience. The parties to the suit could thus, by a consent order, bring the fund into court, but they could not dictate the purposes to which it should be applied, so as to affect the rights of other parties intervening by the permission of the court. These intervenors are in nowise bound by the provisions of an order to which they were not parties, excluding them from participation in the fund. Neither, certainly, are the hands of the court tied by the provisions of the order as to what particular creditors should be paid out of the fund. For, in the first place, the judgment of the court could be considered as as binding only upon the consenting parties then before it, not as against the intervening claimants who have since come in by permission to assert their rights. See *In re Howard,* 9 Wall. 175. But, in the second place, this 30 per cent. fund is only a small fragment of the entire railroad property over which the court has full and complete jurisdiction. The jurisdiction of the court over the property as a trust fund has never been disturbed or lost. In the very order now in question, the court, apparently out of abundance of caution, provided that its plenary jurisdiction over the property should continue. The language of the order is that "this order shall be without prejudice to the right of persons interested to move for the appointment of a receiver of the property of said defendant railway company," etc. The court could, therefore, by the very terms of this reservation, grant relief in a proper case to parties having a right to participate in the fund, even by the extreme measure of appointing a receiver of the whole railroad property.

In *Re Howard, supra,* the supreme court decided that even after a decree for a distribution of the fund to certain parties then before the court had been affirmed in the supreme court, and a mandate sent to the circuit court to execute the decree, the circuit court might open the case and allow other creditors to participate in the fund, and that this power continued up to the moment of the final distribution.

It is clear, therefore, that the court is not bound by the foregoing order to restrict its relief to the classes of creditors designated in the decree. Even if the court had made a decree giving the fund to particular parties by name, instead of merely designating them by classes, it would be entirely competent to modify the order so as to let in the claims of other creditors entitled to participate in the fund.

It being, then, unquestionable that the jurisdiction of the court continues in full force over both the 30 per cent. fund and the general property of the defendant company as trust funds for the payment of debts, the real and only question is whether or not the claims of the present intervenors are such as the court can, upon principles of equity, establish as liens upon the fund paramount to the lien of the bondholders. There can certainly be no doubt as to the right of these claimants to satisfaction out of the trust property as against the Missouri, Iowa & Nebraska Company and the Wabash Company, both of

which are bound by contract to pay all the floating debts of the Missouri, Iowa & Nebraska Company. But perhaps the real question to be solved is not between the present intervenors and the two railway companies, but between the intervenors claiming satisfaction out of the mortgaged property, and the mortgage creditors having liens upon the same. It may, indeed, be questioned whether the bondholders had any lien upon the 30 per cent. rental until the Wabash Company made default in the payment of interest upon their bonds, and the bondholders caused the railway property to be taken possession of by a receiver of the court. See *Gilman* v. *Illinois & M. Tel. Co.* 91 U. S. 603. In this case certain creditors of the railway company, between the decree of foreclosure and the sale, no receiver being appointed, garnished the receipts of the railway company in the hands of its operating agents. The supreme court of the United States sustained the action of the creditors upon the ground that the lien of the mortgage did not attach to the income of the road in the hands of the railway company without the appointment of a receiver to take possession of the road and property. But, however this may be, it is perfectly clear that the bondholders had no lien whatever upon the 30 per cent. rental fund until the Wabash Company made default in the payment of their interest upon the bonds of that road.

The semi-annual interest was, as we understand, paid by the Wabash up to March, 1884, and there can be no further default till September, 1884. To whom, then, in the intervening time between the issuing of the Wabash bonds and their default in the payment of the semi-annual interest, did the 30 per cent. belong? The Wabash Company was bound to pay the interest on their bonds, and it seems they did pay till March, 1884, without respect to the earnings of the road. Whether these earnings were great or insignificant, the interest had to be paid, and it *was* paid. The Wabash had a right, after paying the interest, to appropriate to its own use so much of the 30 per cent. gross earnings as might be necessary to reimburse itself. The balance belonged of right to the defendant railroad company. Hence, the 30 per cent. fund was, during the intervening time mentioned, the property of the two railroad companies, and certainly the bondholders who received full payment of their semi-annual interest had no lien upon it whatever. One of the necessary results, indeed, of the consent order of October, 1880, was that the Wabash Company should pay the semi-annual interest to the bondholders out of its general assets, and that it should not apply the 30 per cent. rental to that purpose, for by the order of the court that fund was to be paid to the receiver for the benefit of floating creditors. To this the bondholders gave their consent, and they must have agreed to look exclusively, for the time being, to the Wabash Company, irrespective of the 30 per cent. fund, for payment. It follows that the bondholders had no lien or claim whatever on the 30 per cent. fund until, by the order of the court, the Wabash should cease to pay it to the re-

ceiver; the order providing, in express terms, that said payments should commence on the fifteenth day of November, 1880, and include the earnings thereof for the month of October, 1880, and so to continue from month to month until otherwise ordered by the court. Hence, all creditors holding claims for which both companies were bound, had a right to subject this 30 per cent. fund, in any lawful manner, to the payment of their debts, without any prejudice whatever to the lien of the mortgage, for none existed; the bondholders having received their interest, and the principal not yet being due. And this 30 per cent. fund being, by the consent order of October, 1880, in the hands of the court, through its receiver, no party, except the two debtor railroad companies,—both of which are bound, by contract, to pay the floating debts of the Missouri, Iowa & Nebraska Company,—has any right whatever to object to its application by the court to the payment of those debts.

But independent of this view, which seems to me conclusive, so far as the 30 per cent. fund is concerned, it is well-settled that there are floating claims, having no semblance of a legal lien, which may be established as equitable liens upon the railway property, and made paramount to the lien of the mortgage. *Burnham* v. *Bowen*, 111 U. S. 776; S. C. 4 Sup. Ct. Rep. 675; *Fosdick* v. *Schall*, 99 U. S. 235, 252. The present claims, though they may not, perhaps do not, fall within the doctrine of these cases, have, nevertheless, in my judgment, an irresistible equity, under the peculiar circumstances of the case, to be established as against the lien of the mortgage creditors; because, in the *first* place, the bondholders, for their own interest, were parties to an arrangement by which the sale of the trust property was arrested, and the unsecured creditors deprived of their right to satisfaction out of the surplus which we may reasonably assume would have resulted from the sale; *second*, because, as a part of the same arrangement, the entire property of the defendant company was transferred to the Wabash Company, leaving the defendant company without any means whatever to pay its debts, and this with the consent of the bondholders, for their benefit, and with their co-operation; *third*, because the bondholders, by the same arrangement, received a new and ample security for their debts in the personal obligation of the Wabash Company, and agreed to surrender and exchange their Missouri, Iowa & Nebraska bonds for those of the Wabash Company.

It is not necessary, to the right of intervention to participate in a trust fund *in custodia legis*, that the intervenor should first obtain judgment at law, or that he should have any lien upon the fund. *Barton* v. *Barbour*, 104 U. S. 126.

The exceptions to the master's report are therefore overruled, and a decree will be entered establishing the liens of the intervenors in accordance with this opinion.