## IN THE MATTERS OF HOWARD.

1. Where there is a fund in court to be distributed among different claimants, a decree of distribution will not preclude a claimant not embraced in its provisions, but, having rights similar to those of other claimants who are thus embraced, from asserting by bill or petition, previous to the distribution, his right to share in the fund, and in the prosecution of his suit, he is entitled, upon a proper showing, to all the remedies by injunction, or order, which a court of equity usually exercises to prevent the relief sought from being defeated.

2. The judgment, or decree of an inferior court, when affirmed by this court, is only conclusive as between the parties upon the matters involved. It does not conclude the rights of third parties not before the court, or in any respect affect their rights. It acquires no additional efficacy by its affirmance. As an adjudication upon the rights of the parties between themselves it has the same operation before as after its affirmance.

3. Accordingly where a decree of a Circuit Court of the United States, affirmed by this court, had determined that the complainants and certain intervening claimants, were entitled to a fund in the hands of the receiver of the court, and ordered the distribution of the fund among them, it was held that it did not preclude third parties from proceeding by bill to assert their claims to share in the fund, before its distribution; and to prevent such distribution, before their claims could be considered and determined, they were entitled, upon presenting a *primâ facie* case, to a restraining order or injunction from the court.

THESE were two motions which were heard together, as they involved a consideration of similar questions, and grew out of the same facts. The first motion was for a peremptory

mandamus to the judges of the Circuit Court of the United States for the District of Iowa (the alternative writ having been heretofore issued and returned), commanding them to execute a decree of that court rendered in the case of *Howard and others* v. *The City of Davenport and others*, by distributing certain funds in its custody. The second motion was to dismiss the appeal from the final decree, rendered in a subsequent suit, affecting the distribution of those funds.

The facts out of which these cases arose, were substantially as follows:

In 1854 the legislature of Iowa incorporated a company, styled the Mississippi and Missouri Railroad Company, to construct a railroad from Davenport to Council Bluffs, in that State, with a branch to Oskaloosa. To raise the necessary funds for the construction of the road the company executed, previous to 1861, several mortgages upon its property to secure its bonds, issued at different times, amounting to over six millions of dollars. The company also received, previous to 1861, in payment of subscriptions of stock, bonds to a large amount of certain cities and counties in the State, through which the road was located, the payment of which bonds was guaranteed by a special indorsement upon each. With the guaranty of this indorsement it disposed of the bonds to different parties.

In 1865 the company became embarrassed and insolvent, and in February, 1866, a suit was brought in the Circuit Court of the United States for the District of Iowa for the foreclosure of the mortgages upon its property. In May following the suit resulted in a decree for the sale of the property, and in July of the same year a sale was made under the decree, by a master in chancery, to the Chicago, Rock Island, and Pacific Railroad Company, a corporation created by the State of Iowa. The foreclosure and sale were made pursuant to an arrangement entered into between the stockholders and the greater number, but not all, of the bondholders, and other creditors of the company, by which it was agreed that the sum of $5,500,000 in bonds of the purchasing company should be given for the property, and applied

to the payment of the bonds secured by the different mortgages of the insolvent company, in conformity with a specified scale, with the exception of an amount equal to sixteen per cent. on the capital stock of that company, namely, $552,400, which should go to its stockholders.

Previous to this time Mark Howard and John Weber had severally recovered judgments against the city of Davenport, and also against the Mississippi and Missouri Railroad Company, upon certain bonds issued by that city to aid in the construction of the railroad, and guaranteed by that company. In the distribution of the proceeds to be received upon the sale of the property of the insolvent company no provision was made for the payment of these judgments, and on the 9th of July, 1866, the day on which the sale mentioned under the decree of foreclosure was made, Howard and Weber brought a suit in equity in the same court against the parties to the foreclosure suit to obtain payment of their demands out of the proceeds, which, by the arrangement mentioned, were to go to the stockholders. In their bill they set forth the judgments recovered by them against the Mississippi and Missouri Railroad Company; that the company was insolvent; that all its property had been sold under the decree of foreclosure; and that there was no other property out of which these judgments could be made than the $552,400 which was to be received by the stockholders out of the proceeds of the sale.

During the progress of the suit fourteen other persons appeared and presented claims of a similar character, to an amount exceeding seven hundred thousand dollars, against the same fund. These parties are designated in the proceedings as " intervening claimants joining in the bill." On application of the complainants and these intervening claimants a receiver was appointed by the court to collect and hold the fund which they were seeking to subject to the payment of their claims. This officer subsequently received from the Chicago, Rock Island, and Pacific Railroad Company, the purchasing company, in its first mortgage bonds, with interest coupons attached, the amount which was to go to the

stockholders of the insolvent company, and has ever since held the same in his custody, subject to the order of the court.

In May, 1868, a final decree was rendered in the suit, adjudging that the complainants and intervening claimants were entitled, as creditors of the Mississippi and Missouri Railroad Company, to so much of the purchase-money of its property as was agreed to be reserved for the stockholders; and directing the purchasing company to pay the same, less a small sum allowed for over-payment, in cash or its bonds, to the receiver; and directing the receiver, if paid in bonds, to convert the bonds into money, and, after satisfying certain costs, distribute the proceeds to the complainants and intervening claimants *pro rata*, in proportion to the amounts of their respective claims, which were stated. On appeal to this court this decree was affirmed, and the mandate to the Circuit Court, issued in pursuance of the judgment of affirmance, commanded " that such execution and proceedings be had in said cause, as according to right and justice, and the laws of the United States, ought to be had, the said appeal notwithstanding."

Whilst the appeal was pending Frederick A. Foster presented a petition to the Circuit Court, setting forth that he was a holder of certain bonds of the Mississippi and Missouri Railroad Company, secured by a mortgage on its property, which had never been paid; that he was not a party to the arrangement by which, upon a sale of the property, as already mentioned, a certain portion of the proceeds received were to be paid to the stockholders, and insisting that the fund thus realized was applicable to the payment of these bonds, and praying for an order restraining the distribution of the fund in the hands of the receiver, and directing that upon proper pleadings an issue be joined between the petitioner and other holders of bonds who never assented to the arrangement mentioned, and the complainants and intervenors, to settle the priorities of the parties in an application of the fund.

Subsequently three other parties, McCollum, Bardwell, and

McComb, presented similar petitions to the Circuit Court, setting forth that they were also holders of bonds of the insolvent railroad company, which had never been paid, and asking that the proceeds derived from a sale of its property, in the hands of the receiver, be applied to the payment of these bonds, in preference to the claims of any parties to the suit of Howard and others.

In May, 1869, the court denied the prayer of the petitioners, but allowed them to file their petitions, and required them to file a consolidated bill at the next term of the court against all the parties to the suit, setting up their respective claims with greater particularity than in the petitions.

In July following, the petitioners, Foster, McCollum, Bardwell, and McComb, filed their consolidated bill against Howard and all the other parties to the original suit, asserting their claims as mortgage bondholders to the fund in the hands of the receiver. The bonds amounted to about seventy-two thousand dollars, with large arrears of interest, for which they claimed a lien upon the fund in preference to the claims of Howard and others, and if that was not allowed, then they claimed the right, as general creditors, to share with them in the distribution of the fund.

All the defendants answered the bill, denying that the complainants had any lien on the fund as mortgagees, or any right to the fund as general creditors, and contending that if they were such creditors, the defendants were entitled, as a reward of their superior diligence, to be first paid out of the fund. No objection was made by them that after a final decree, affirmed by this court, directing a distribution of the fund, it was too late for the complainants to file their bill to reach the fund, or to share in its distribution.

In November, 1869, the Circuit Court heard the case and rendered a final decree, rejecting the claim of McCollum, and allowing the claims of the other three complainants, Foster, Bardwell, and McComb, to a limited amount as general creditors.

From this decree the complainants appealed: McCollum, because his claim was entirely rejected; Foster, Bardwell,

and McComb, because they were allowed to come in only as general creditors. The appeal was now pending in this court

After this appeal was perfected, Howard and others, the complainants and intervening claimants in the original suit, applied to the Circuit Court for a rule on the receiver to proceed to execute the decree rendered therein by the distribution of the fund in his hands, as provided by the decree in that case, notwithstanding the appeal of Foster and his associates, or of any of them; or in case the court should be of opinion that the motion could not be granted in full, that then the receiver should be ordered to proceed to execute the decree, except as to such portion of the fund as to which execution was suspended by order of the court made at the May Term. This motion the Circuit Court denied.

The same parties then applied to this court for a writ of mandamus to the judges of that court, commanding them forthwith to execute the decree rendered at the May Term, 1868, and affirmed by this court, or to execute the decree by distributing all the fund, excepting sufficient to cover the claims of the appellants. This court, as is usual in applications for a mandamus, on a *primâ facie* showing, allowed the alternative writ, which being returned, the parties now asked for the peremptory writ. The parties at the same time moved to dismiss the appeal from the final decree in the above suit of Foster and his associates.

*Messrs. Grant and Rogers, in support of the motions:*

1. A judgment or decree affirmed by this court cannot be altered by new pleadings or evidence in the court below, but must be executed in the exact manner in which it is affirmed. Such is the rule in the State courts.*

The question has been conclusively settled in this court by a series of decisions.† In Sibbald's case this court said

---

* Ogden *v.* Bowen, 4 Scammon, 301; Abrams *v.* Lee, 14 Illinois, 167; Chickering *v.* Failes, 29 Illinois, 302; Biscoe *v.* Tucker, 14 Arkansas, 515, 523; Miner *v.* Medberry, 7 Wisconsin, 100, 102; Young *v.* Frost, 1 Md. Chan. 377.

† Cameron *v.* McRoberts, 3 Wheaton, 591; Brocket *v.* Brocket, 2 Howard, 238; McMicken *v.* Perrin, 18 Id. 507, 511.

that "no principle is better settled, or of more universal application, than that no court can reverse or annul its final decrees or judgments, for errors of fact or law, after the term at which they have been rendered, unless for clerical mistakes, or to reinstate a cause dismissed by mistake; from which it follows, that no change or modification can be made which may substantially vary or affect it in any material thing. Bills of review in cases of equity, and writs of error *coram nobis*, at law," they say, "are exceptions, which cannot affect the present motion." They add:

"When the Supreme Court have executed their power in a cause before them, and it requires further action, it sends a mandate to the court below. Whatever is before this court, and is disposed of, is considered finally settled. The inferior court is bound by the law of the case; and must carry it into execution according to the mandate. They cannot vary or examine it for any other purpose than execution, or give any other or further relief, or review it upon any matter decided on appeal for error apparent, or intermeddle with it further than to settle so much as has been remanded. After a mandate, no rehearing will be granted. It is never done in the House of Lords. And on a subsequent appeal nothing is brought up but the proceedings subsequent to the mandate."*

2. If it be argued that Foster and others were not parties to the decree and not bound by it, we answer, that if all the necessary parties were not before the court when the case was originally heard, it was the duty of the court to require the plaintiffs to bring them in, and a failure to do so was ground of error in that cause.

But this court, in affirming the decree, decided that neither the bondholders nor stockholders were necessary parties, and they held, by implication at least, that no other parties were necessary, and the plaintiffs in Howard's suit had a right to

---

* Ex parte Sibbalds, 12 Peters, 488, 492; Washington Bridge Company v. Stewart, 3 Howard, 413; Chaires v. The United States, 3 Howard, 611–620; Bank United States v. Moss, 6 Howard, 31–41; Southard v. Russell, 16 Howard, 547, 571; McLaughlin v. O'Rourke, 12 Iowa, 459. 563.

file a bill as general creditors for themselves alone, and thus gain as at law a preference by the judgment in their favor over other creditors of the same degree who may not have used equal diligence.* No right to intervene in this cause.†

*Messrs. F. Withrow and S. W. Fuller,* contra, citing *Gillespie* v. *Alexander,‡ Williams* v. *Gibbs,§* and other English and American cases.

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

There is no ground for supposing any intention on the part of the circuit judges, or of either of them, to evade or disobey the mandate of this court. Their action has been dictated entirely from an opinion held by them that parties asserting a right to share in a common fund in the custody of the court, and presenting a *primâ facie* case in support of such asserted right, are entitled to be heard at any time before its actual distribution, although a decree ordering such distribution in a litigation between other parties may have been entered. Whether in this opinion they are sustained by the law, is the question presented for our consideration. We are not called upon to determine the character of the claims presented, whether they constitute liens upon the fund in the hands of the receiver, or stand as simple debts against an insolvent company, or whether the right, if any ever existed, of the holders to share in the fund has been lost by their laches. The question is not as to the merits of the claims, but whether the Circuit Court was forbidden by the force of its previous decree, when affirmed by this court, from considering the claims at all.

---

* Gordon v. Lowell, 21 Maine, 251; Lucas v. Atwood, 2 Stewart, 378; Corning v. White, 2 Paige, 567; Ogilvie v. Knox Insurance Company, 2 Black, 539.

† Brunson v. Railroad Company, 2 Black, 524; United States Bank v. Burke, 4 Blackford, 145; George v. Williamson, 26 Missouri, 190; Myers v Zanesville Co., 11 Ohio, 273; Same v. Same, 13 Ohio, 197.

‡ 3 Russell, 130.                                    § 17 Howard, 257.

Undoubtedly it is the duty of all inferior courts to yield a prompt obedience to the mandate of this court, or, in other words, to treat as conclusive the judgment of this court upon the law and facts presented to it in appropriate form for consideration.   Any other conduct would be subversive of the relation which the Constitution intends that inferior tribunals shall hold to this court.   But the obedience thus due is not a blind obedience, acting upon the letter of the judgment affirmed, or mandate ordered, without any consideration of the rights of persons not parties to the litigation in which the judgment was entered.   The judgment of an inferior court, when affirmed by this court, is only conclusive as between the parties upon the matters involved.   Viewed simply as an adjudication between them, it is not open to question.   It must be followed and obeyed.   The inferior court cannot reopen the case and allow new proceedings to be taken, or further evidence to be given, or new defences to be offered, upon any ground whatever.   It must execute the judgment or decree, and only for that purpose has it any authority over it.   Such is the purport of the numerous cases cited by the counsel for the relators.   But they go no further.   None of them suggest even the proposition that the judgment or decree affirmed concludes the rights of third parties not before the court, or in any respect affects their rights.   It would have been against all principle and all reason had they asserted anything of the kind.   There is, indeed, a class of cases affecting the personal status of parties, in which a judgment necessarily binds the whole world, but it is not of these we are speaking.   We refer to judgments at law or decrees in chancery, affecting rights of parties to property.   They bind only the parties before the court and those who stand in privity with them.

The counsel of the relators seek to apply the conclusive character of such judgments and decrees between parties to persons not parties, under the supposition, it would seem from their argument, that they require some additional efficacy from their affirmance by this court.   But they acquire no additional efficacy by such affirmance.   As adjudications

upon the rights of the parties between themselves they have the same operation before as after their affirmance.

The decree in the case of *Howard and others* v. *The City of Davenport and others,* determined that the complainants and the intervening claimants were entitled to the fund in the hands of the receiver as against the defendants. It did not determine, and could not determine, that Foster and his associates had not equal or greater claims to the fund than either of those parties. They had, therefore, the same right to proceed by bill or other appropriate remedy, if there be one, to assert any claims or equity to the fund which they possessed, as they might have done if no such suit as that of *Howard and others* v. *The City of Davenport and others,* had ever been commenced or carried to final decree. And in the prosecution of their suit they were entitled, upon a proper showing, to all the remedies by injunction or order, which a court of equity usually exercises to prevent the relief sought from being defeated.

The general doctrine that where there is a fund in court to be distributed among different claimants, a decree of distribution will not preclude a claimant not embraced in its provisions, but, having rights similar to those of other claimants who are thus embraced, from asserting by bill or petition his right to share in the fund, is established by numerous authorities, both in England and the United States. Several of these are cited by counsel, to two of which we will refer. The first is that of *Gillespie* v. *Alexander.** That was a suit for the administration of the estate of General Gillespie. After several debts against the estate had been proved before a master and been paid, the court, in January, 1825, decreed a distribution of the residue of the fund in court to the unsatisfied legatees. In November, subsequently, a party appeared claiming to be a creditor of Gillespie, and petitioned the court for liberty to prove his demand, and liberty was given. In July of the following year the master reported that there was due the petitioner over sixteen hun-

---

* 3 Russell, 130.

dred pounds.  In the meantime the fund had been apportioned under the decree, and part of it had been paid in discharge of some of the legacies.  The master of the rolls ordered that the debt to the petitioner should be apportioned among the funds of the different legatees, whose legacies still remained in court, observing that the legatees were not without remedy, as they could call on the other legatees to contribute.  From this order an appeal was taken to the chancellor, and the principal objection urged to the order was similar to the objection urged in this case, that the creditor was concluded by the decree directing distribution, but Lord Eldon, in deciding the appeal, said:

" Although the language of the decree, where an account of debts is directed, is that those who do not come in shall be excluded from the benefit of that decree, yet the course is to permit a creditor, he paying the costs of the proceedings, to prove his debt, as long as there happens to be a residuary fund in court, or in the hands of the executor, and to pay him out of that residue.  If a creditor does not come in till after the executor has paid away the residue, he is not without a remedy, though he is barred the benefit of that decree.  If he has a mind to sue the legatees and bring back the fund, he may do so, but he cannot affect the legatees except by suit, and he cannot affect the executor at all."

And the chancellor ordered that the debt should be apportioned to the shares of all the legatees, and that the petitioner should be paid the sums apportioned to the shares remaining in court, and be at liberty to apply against the legatees who had been paid, and against funds which might subsequently come in, for the balance due him.

The other case to which we will refer is that of *Williams* v. *Gibbes*, decided by this court and reported in the seventeenth of Howard.  In that case, the County Court of the Sixth Judicial District of Maryland had, by its decree, rendered in December, 1846, awarded to the executors of one Oliver, the proceeds of a share of one Williams in an association known as the Baltimore Company.  Upon appeal to the Court of Appeals of the State, the decree of the County

Court was, in this respect, affirmed. In 1852, six years after the entry of the decree, the administrator of Williams filed a bill, in the Supreme Court of Baltimore City, against the executors of Oliver, for the proceeds of Williams's share, averring that neither he nor Williams was present, or a party to, or bound by, any proceeding, or order, or decree of the County Court, or of the Court of Appeals, and that the settlement and adjustment of the amount of the partnership funds of the Baltimore Company, and of the charges, commissions, and costs to which they were liable in *solido*, and the distribution of the remainder of the funds by the decree of the court to the several shares, which the members of the company were entitled to, were not binding upon him or his intestate.

The case was transferred from the State court to the Circuit Court of the United States, where the bill was dismissed. On appeal to this court the decree of dismissal was reversed. Mr. Justice Nelson, speaking for the court, said:

"Now, the principle is well settled in respect to these proceedings in chancery, for the distribution of a common fund among the several parties interested, either on the application of the trustee of the fund, the executor or administrator, legatee, or next of kin, or on the application of any party in interest, that an absent party, who had no notice of the proceedings, and not guilty of wilful laches or unreasonable neglect, will not be concluded by the decree of distribution from the assertion of his right by bill or petition against the trustee, executor, or administrator; or in case they have distributed the fund in pursuance of an order of the court, against the distributees."

And after referring to various cases from the English courts, and among others to that of *Gillespie* v. *Alexander*, already cited, said:

"The cases above referred to relate to the rights of creditors and next of kin; but the principle is equally applicable to all parties interested in a common fund brought into a court of equity for distribution among the several claimants."

These cases, and the general principles governing courts

of equity in the disposition of a common fund, of which there are several claimants, are sufficient to show that the judges of the Circuit Court were justified in authorizing Foster and his associates to file their consolidated bill, and thus present for consideration their claims to share in the fund in the hands of the receiver, and in withholding the distribution of the fund under the decree in the case of *Howard and others* v. *The City of Davenport and others*, until such claims could be considered and determined.

Whether in the determination of these claims the Circuit Court decided rightly or otherwise, can only be settled upon the hearing of the appeal from its decree.

It follows that the motion for a mandamus, and the motion to dismiss the appeal from the final decree, must both be

DENIED.