FLASH and others *v.* WILKERSON and others.

*(Circuit Court, W. D. Tennessee.  January 12, 1885.)*

1. EQUITY PRACTICE — CREDITORS' BILL — PRIORITY—TENNESSEE CODE, §§ 4288, 4290.

   A plaintiff filing a bill in behalf of himself and other creditors, to set aside a fraudulent conveyance, under sections 4288 and 4290 of the Tennessee Code, is entitled to priority of satisfaction, unless the other creditors become parties to the suit before the final decree, by giving the bond required; and they will not be admitted, as under the general equity practice of the federal courts, to share in the fund at any time before the final distribution.

2. SAME — STATE AND FEDERAL PRACTICE — REMOVAL OF CAUSES — ENLARGED REMEDY.

   Where a cause begun in the state court to enforce an enlarged equitable remedy in favor of general creditors having no judgments and *nulla bona* returns is removed to the federal court, a statutory rule of state practice, which operates as a condition attached to the right given by the statute, will be enforced after the removal, in order to preserve the liens of the creditors as they are fixed by the statute.

3. INSOLVENT DEBTOR—GENERAL ASSIGNMENT—TENNESSEE ACT, 1881, CH. 121—ATTACHMENT LIEN—PREFERENCES.

   A statute, enumerating certain conveyances and judgments, which are to be avoided by a general assignment of an insolvent debtor as preferences, will not be extended to include preferences not of the character of those enumerated.  Therefore, the Tennessee Act of April 6, 1881, *c.* 121, does not affect the lien of a bill, the attachment or judgment of a creditor proceeding under the Tennessee Code, § 4288, to set aside a fraudulent conveyance, which has been followed by a general assignment by the debtor of all his property for the benefit of all his creditors.

In Equity.

*McCorry & Bond,* for plaintiffs.

*A. J. McGehee,* for creditors.

HAMMOND, J.   When this case was formerly heard, there was a decree for the plaintiffs setting aside a fraudulent conveyance, and a reference to the master to report the amount of the fund, and the parties entitled thereto, preparatory to its proper distribution.  *Flash* v. *Wilkerson,* 20 FED. REP. 257.   The bill was filed by certain creditors "in behalf of themselves and all other creditors of defendant J. R. Wilkerson who might make themselves parties, and bear their proportion of the expenses."   It was filed in the state chancery court, where attachments issued, and a receiver was appointed, but was subsequently removed to this court.   There were two funds in the hands of the receiver,—the principal one being that realized by the sale of the stock of goods which the debtor had fraudulently conveyed, and which was attached in the hands of the vendee; and the other, that realized from outside assets which had never been fraudulently conveyed, but had passed by a general assignment made a few days after the fraudulent sale to Hopper.   The decree rendered at the hearing gave certain specific directions as to the disposition of the principal fund; among others, that it should be "applied to the debts of complainants, and such other creditors of J. R. Wilkerson as may be en-

titled thereto;" and also certain directions as to the other fund, with a like provision that it should be "applied to the debts of complainants and such other creditors as may be entitled thereto." It further directed as follows:

"That time be given until the first day of October next for creditors to make themselves parties, complainants to the cause, by filing their claims, with satisfactory proof thereof, with the clerk to whom this cause is referred, and who is directed to report to the court by the first day of the next term the amount of the claims filed and proven by each creditor, as well as the claims of the creditors already before the court and named as complainants in this suit, setting forth in his report the nature and character of the respective claims, and the several amounts due thereon. All questions not adjudicated, and all questions of distribution, are reserved."

The clerk, as special master, has filed his report under this decree, making a *pro rata* distribution of both funds among all the creditors who have proved their debts. No objection is made to this as to the second fund above mentioned, but the plaintiffs insist that they alone are entitled to the whole fund arising out of the sale of the goods fraudulently conveyed to Hopper, and that the other creditors should not be permitted to share therein; and this is the question submitted for our decision. The plaintiffs were all judgment creditors with *nulla bona* returns of their respective executions at the time they filed their bill, and whether proceeding under their rights and privileges in that behalf, or under section 4288 of the Code—to be presently quoted —as they chose to do, the only way to acquire a full and separate satisfaction of their respective claims, regardless of each other and of all other creditors, was by separate and independent bills, each acquiring a lien in the order of its priority. Code, Tenn. (T. & S.) §§ 4283–4293. The plaintiffs did not choose to sue independently, but joined with each other in their own behalf, and that of all other creditors who might make themselves parties, under the following section of the Code:

"Any creditor, without having first obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property by sale or otherwise, to the satisfaction of the debt." Tenn. Code, 4288.

A court of equity usually struggles for the principle of equality among creditors in the distribution of the assets of an insolvent debtor through its remedial process; and if judgment creditors, either under the ordinary remedy which a court of equity affords to them as such or the statutory provisions of the Tennessee Code in their behalf, might by a proper proceeding appropriate all the assets in the hands of a fraudulent vendee, they certainly abandon this privilege when they resort to the above-quoted section. If it stood alone, I have no doubt any court of equity would use all its powers to extend to its utmost the right of all creditors to come in and share in the fund, and would impose as few limitations as possible upon that

right, permitting them to come in at any time before actual distribution, or even afterwards, for a contribution where there was no serious neglect or culpable laches. This is, undoubtedly, the general rule of our federal courts of equity, proceeding to administer their own equitable remedies. *Williams* v. *Gibbes*, 17 How. 239, 255; *Myers* v. *Fenn*, 5 Wall. 205; *In re Howard*, 9 Wall. 175, 184; *Wabash Canal Co.* v. *Beers*, 2 Black, 448; *Johnson* v. *Waters*, 111 U. S. 640; S. C. 4 Sup. Ct. Rep. 619; *Hurley* v. *Murrell*, 2 Tenn. Ch. 620, 626; 2 Daniell, Ch. Pr. (5th Ed.) 1205. On the doctrine of these cases, it would be proper to permit the other creditors to come in at any time before distribution, or, under some circumstances, even afterwards, and share in the fund. But we are not, in this case, proceeding altogether under the general principles of a court of equity, which govern our federal courts in their chancery practice, to administer this fund under the ordinary bill of a judgment creditor with a *nulla bona* return, but under a bill commenced in the state court and removed here to have the benefit of these Tennessee statutes, giving creditors an enlarged and purely statutory remedy; which remedy the federal courts will administer according to their own practice, it is true, but none the less to enforce the liens given by these statutes, and in accordance therewith, and in obedience thereto, (*Clark* v. *Smith*, 13 Pet. 202; *Ex parte McNiel*, 13 Wall. 243; *Broderick's Will*, 21 Wall. 520; *Reynolds* v. *First Nat. Bank*, (1884,) 5 Sup. Ct. Rep. 213, 216;) besides, by the very terms of the removal acts, we are required to preserve all the liens and rights of the parties as they existed in the state courts. Rev. St. 646; Act March 3, 1875, c. 173, § 4, (18 St. 471;) *Whittenton Manuf'g Co.* v. *Packet Co.* 19 FED. REP. 273, 279.

Whether the lien given from the filing of the bill by section 4286 of the Tennessee Code is to be confined to bills filed under section 4283, or applies as well to bills under section 4288, above quoted, is immaterial, because, certainly, these plaintiffs acquired a specific lien under section 4289 when their attachment was levied. *August* v. *Seeskind*, 6 Coldw. 166; *House* v. *Swanson*, 7 Heisk. 32; *Greene* v. *Starnes*, 1 Heisk. 182; *Cowan* v. *Dunn*, 1 Lea, 68; *McCrasly* v. *Hasslock*, 4 Baxt. 2; *Brooks* v. *Gibson*, 7 Lea, 271; *Armstrong* v. *Croft*, 3 Lea, 193; *Tarbox* v. *Tonder*, 1 Tenn. Ch. 163. This lien cannot be disturbed by permitting others to displace it, in whole or in part, without a compliance with the statutory prerequisites which entitle other creditors to come in and share the fund. These are set forth in the next section (4290) as follows:

"If the bill is filed by one creditor for himself and others, the other creditors may make themselves parties at any time before final decree by petition, agreeing to join in the bonds required in the case, and giving bond, with good security, to the original complainant, and in sufficient penalty, to pay their proportional part of the recovery on such bonds." Tenn. Code, § 4290.

The doubt I have had on this section is whether it is a mere rule of practice prescribed for the state courts, and therefore not binding on the

federal court when the case has been removed,—for certainly we do not follow the state practice in removed cases, but proceed in our own way, —or is an essential element of the equitable right, which enters into the statutory lien and becomes a part of it. Under the general equity practice governing us, as I have shown, creditors who may share in the fund to be recovered are allowed to come in at any time before distribution, and, in certain cases, even afterwards. They may be admitted by petition, or by proving their claims before the master, and the time may be enlarged by the court, which takes care, however, to require them to pay such costs as they should pay under the circumstances. This state statute evidently prescribes an analogous rule of practice, but modifies it by requiring the creditors to come in *before* final decree, and only upon agreeing to join in the bonds, and executing a bond to the original plaintiff for the performance of that agreement. I should think that this was a mere rule of practice of the state court that, on removal, would be superseded by the federal practice in equity, which accomplishes the same result as to costs in another way, but is more liberal as to time allowed to file claims, if this were a suit to enforce an equitable right common to both courts; a bill, for example, by a judgment creditor with an unsatisfied execution, to set aside a fraudulent conveyance which obstructed that exetion, and to share in which other judgment creditors with like execution might be admitted. But this is not such a bill, and the judgments and executions are wholly unimportant under sections 4288 and 4291. All creditors stand alike under those sections, and this is an *enlarged* right wholly unknown to general equity practice like ours, and dependent entirely upon the statute for its force and effect. The legislature, therefore, in granting this valuable equitable right to general creditors without judgments, may attach precisely such conditions to its existence as its wisdom may suggest. And while the federal courts, upon removal, will enforce this new equitable right, unknown to them, in favor of general creditors, the case comes here burdened with all the essential conditions attached to the right by the statute, and we cannot further enlarge it simply to save our rules of practice. We will enforce it in our own way, but we must not change its character and give the creditor a better or different right than he would have in the state court, particularly if, in doing this, we thereby impair the lien given by the same statute to the original plaintiff, which our own removal acts command us to protect.

The general creditors, therefore, should have come in before the final decree and given the required bond, or they cannot share in the fund and displace the priority acquired by the original plaintiff; and, after all, this is not a harsh rule, for almost any one would be willing to stand outside, and, after a recovery, come in and prove his claim; while the timid and the selfish would prefer this to sharing the perils of the litigation, as this statute requires they shall.

It is further urged that, because the debtor Wilkerson made a gen-

eral assignment of *all* his property for the benefit of *all* his creditors a few days after the sale to Hopper, the property conveyed to Hopper passed under the assignment, and must be, under the provisions of the act of April 6, 1881, c. 121, (Acts 1881, p. 154,) distributed *pro rata* among all the creditors. This point was substantially disposed of at the hearing. *Flash* v. *Wilkerson,* 20 FED. REP. 257; *Ordway* v. *Montgomery,* 10 Lea, 514. It may be further remarked that when this bill was filed an attachment issued, by which the plaintiffs acquired a lien before the assignment, and there is nothing in the act referred to which displaces this lien. It does displace any mortgage, deed of trust, or other conveyance of a portion of the debtor's property for the benefit of any particular creditor, or any confession of judgment, or judgment by default or collusion within three months preceding the assignment; but, plainly, this does not include a lien acquired under sections 4288 and 4291 of the Code. The case of *Ordway* v. *Montgomery, supra,* is conclusive of this, as the principle of *noscitur a sociis* clearly applies to exempt both the sale to Hopper and the lien of the creditors, under this bill, from the operation of that act. The principle is the same as that on which the case of *Love* v. *Pamplin,* 21 FED. REP. 755, 760, was recently decided in this court by Mr. Justice MATTHEWS.

The report of the master must be modified in accordance with this opinion. Decree accordingly.