BURKE et al. v. SHORT.

(Circuit Court of Appeals, Sixth Circuit. March 2, 1897.)

1. RAILROAD FORECLOSURES—DISTRIBUTION OF PROCEEDS—BONDS AND COUPONS.
   A decree for the distribution of the proceeds of a sale under the foreclosure of a mortgage which provided that the coupons of the bonds secured by it should be preferred over the principal, directed that the surplus, after paying preferential claims, should be equally divided among the bonds, paying a certain sum, less than the face of the bond, to the holder of each bond. *Held,* that, though it named only bonds, such decree could not be construed as intended to disregard the preference of the coupons, but was intended to deal with the ownership of bonds with their coupons, the holders of both being at the time the same, and, accordingly, that a holder of coupons subsequently detached, which had matured before the foreclosure, was entitled to be paid in full.

2. SAME.
   *Held,* further, that coupons not matured at the time of the foreclosure, though thereby merged in the principal of the bonds, were entitled, when detached and separated in ownership from the bonds, to be paid proportionately with the remainder of the principal.

**3. SAME.**

    *Held,* further, that orders permitting the withdrawal of parts of a fund deposited in court to secure the payment of certain bonds, the ownership of which was in dispute, upon the deposit of some of such bonds, contemplated the deposit of bonds with proper coupons, and where sums had been withdrawn upon the deposit of bonds without coupons, the same, so far as in excess of the amount properly due to bonds without coupons, must be refunded by the parties making such deposit.

### Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

    The questions for settlement arise upon an intervening petition filed by the appellee in the case of American Loan & Trust Co. v. Toledo, C. & S. Ry. Co., 47 Fed. 343. The petitioner is the owner and holder of certain interest coupons detached from mortgage bonds issued by the railway company. The object of the intervention is to obtain the payment thereof out of the proceeds of a foreclosure sale had at the instance of the American Loan & Trust Company as trustee under a mortgage made by the said railway company to secure an issue of 825 bonds for $1,000 each, bearing interest at the rate of 6 per cent., payable semiannually, for which interest coupons were attached to the bonds. By the terms of the mortgage the interest was preferred in payment over the principal. The coupons which the appellee owns are coupons detached from bonds so secured. On the 23d of June, 1887, a decree foreclosing said mortgage for the equal benefit of all holders of bonds secured thereunder was duly entered in said cause, and by said decree it was determined that the principal of said bonds was due and payable by operation of a default, under a clause in the mortgage precipitating the maturity of the principal upon default in payment of interest, though otherwise the principal would not have matured for many years. The coupons maturing January 1, 1886, July 1, 1886, and January 1, 1887, were also declared to be due and unpaid. At the sale had under this decree the mortgaged railroad was bought by the appellants at the price of $600,000. Subsequently a decree was entered determining the ownership of the bonds presented for participation in the distribution of the proceeds of sale, wherein it was decided that all of the 825 bonds secured under the mortgage foreclosed were held and owned by the purchasers of the railroad, now the appellants, except 112, which the court found were held and owned by others. The court also found that after providing for the payment of certain receiver's debts, and all costs and expenses of foreclosure, there would be for distribution $543,442.50. This sum the court ordered should be distributed equally to each of said 825 bonds; making, as the decree recites, the sum of $658.70 "applicable on each one thousand dollar bond." This decree was entered December 20, 1890. From it and the pleadings it appears that the appellants had claimed the 112 bonds which the circuit court had decided belonged to others, and, not being content with the decree deciding this question of ownership, they prayed an appeal to the supreme court, which was granted. For the purpose of providing for the payment of the bonds whose ownership was thus disputed, the court required the purchasers to pay into court a sum of money equal to that required to pay the preferential claims, costs, and expenses, and, in addition, a sum sufficient to pay to each of the 112 bonds owned by others than the purchasers the sum of $658.70. That decree also provided that, if the appeal was perfected, the purchasers should have the option of depositing 150 of the bonds owned by them, "together with the coupons attached thereto," to be held as a security for the ultimate payment of the bonds whose ownership was involved in the appeal. The purchasers adopted the latter course, and deposited the bonds as required by the decree. Pending the appeal to the supreme court, Messrs. Burke and Hickox from time to time bought in the bonds over which the litigation was proceeding. As they did so they obtained modifications of the security order theretofore made. Among these modifications was one based upon their claim to have acquired title to some 62 of the litigated bonds. Upon this theory the former order was so modified as to permit them to withdraw from the registry of the court the bonds theretofore deposited, upon paying into court the 62 bonds so acquired by them and $50,000 in money; this sum to be held as security for the payment of $658.70

and interest from December 20, 1890, to each of the remaining bonds the ownership of which was still in dispute. Subsequently others of the disputed bonds were paid into court, as having been acquired by them, and upon that basis they were suffered to withdraw from the money so deposited, until at the time of Mrs. Short's presentation of her petition there remained in the registry of the court a sum insufficient to pay her coupons, if she was entitled to payment thereof. Upon a reference of the matters involved under her petition, it was shown that her coupons were in large part coupons maturing before the foreclosure decree, and that the remaider did not mature until thereafter, and that all of them had been detached from some of the disputed 112 bonds. It was also shown that these bonds, minus their coupons, had been bought in that condition by appellants, and, minus the coupons, had been paid into court under the modifying orders above mentioned. The fact that the coupons properly belonging to said bonds were missing when paid into court was unknown to the clerk, who received them as complete bonds. Upon this state of facts the circuit court held that Mrs. Short's coupons were entitled to be paid in full out of the proceeds of the foreclosure sale, with interest from December 20, 1890, so far as she held coupons which represented interest accrued at the date of the foreclosure decree of January 23, 1887. The court also decided that coupons maturing after that date were to be treated as part of the principal of the bond from which they had been detached, and as entitled to a ratable proportion of the pro rata properly payable upon the principal of the bond of which they were to be treated as a part. The court also held that, to the extent that the sum within the registry of the court had been inadvertently reduced by overpayments to the appellants as owners of the bonds from which these coupons had been detached, appellants should pay into the registry of the court a sum sufficient, with that now there, to pay the decree in favor of Mrs. Short, and the costs. From this decree Burke and Hickox have appealed.

Stevenson Burke, for appellants.

James Parker, for appellee.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Where there is a fund in court to be distributed among a class of creditors, a decree of distribution which seems to make no provision for some of the class will not ordinarily preclude any of the class, having rights similar to those of other claimants, from asserting by bill or petition their right to a share in the fund. The question of delay in filing such claim is one largely governed by the particular circumstances of the case, and by the question as to whether any of the fund remains, out of which equity may be done the tardy applicant. In re Howard, 9 Wall. 175; Williams v. Gibbes, 17 How. 239. It is unnecessary to consider how far the decree of distribution made in this case is subject to be reopened by one of the class secured by the foreclosed mortgage, inasmuch as we are of opinion that that decree, properly construed, does provide for the equal distribution of the proceeds of sale among all the beneficiaries under the mortgage. The averment of the petition that the decree of December 20, 1890, makes no provision for the payment of the interest coupons held by petitioners may be treated as an inadvertent conclusion of law, not estopping the court or the petitioner. The facts entitling her to relief are stated, and the meaning of that decree, as well as others made later, is matter of law, for legal ascertainment. If the decree of distribution is to

be construed as adjudging that the proceeds of sale are to be exclusively distributed in payment of the principal of the bonds secured by the mortgage, and that holders of interest coupons are not entitled to consideration, or to any benefit of the common security, then appellee was entitled to no relief, however erroneous the decree, inasmuch as she was, at least by representation, a party to the cause in which that decree was made. Such a construction is wholly unauthorized. Conceding that her rights must depend upon the real meaning and legal effect of the decree of foreclosure, the decree of distribution, and the later orders made in the cause, we think the decree from which appellants have appealed was right. The decree of distribution, properly construed, was intended to deal with the ownership of bonds and their coupons under the general designation of "bonds." The decree of foreclosure had found that three interest coupons had matured and were unpaid. The mortgage provided for a preference of interest over principal, and it is inconceivable that the court meant that the principal should be paid in preference to the coupons, or to exclude the coupons from consideration as independent subjects of ownership. The case of a separation of a bond from its coupons was doubtless not in the mind of the court, because at that time the bonds and coupons were in the hands of the same persons. The share to be paid to each bond was insufficient to pay both principal and interest, and it was unimportant to pay one sum on account of interest and another on account of principal. Hence the order that $658.70 should be paid "on each of said one hundred and twelve bonds, * * * with interest from December 20, 1890." This order clearly meant the bond with its proper coupons,—the coupons found thereon by the decree of foreclosure. This idea is further found in the direction of the same decree which allowed appellants to deposit 150 bonds, "with the coupons attached thereto," as a security for the payment of the distributive share due to the owners of the bonds not owned by them, when the question of ownership should be settled. The subsequent order allowing appellants to withdraw those bonds, and the later order allowing a withdrawal of the share due to bonds subsequently acquired by them, upon paying into court the bonds so purchased, contemplated a payment into court of a bond with its proper coupons, and all sums withdrawn by appellants under such orders in excess of the share properly due to a bond without its coupons were inadvertent overpayments, and should be returned to the registry of the court, as improperly obtained.

The objection to so much of the decree as is based upon coupons maturing after the decree of foreclosure is predicated upon the argument that by the decree of foreclosure the coupons not matured were merged in the bonds. This may be admitted. But it does not dispose of the question. The circuit court regarded the accrued interest at date of foreclosure as preferred over the principal, and the principal of the bond with its annexed unmatured coupons as together constituting the principal of the bond. If the owner of such a bond chose to sever the bond proper from its unearned cou-

pons, he thereby divided the bond. The holder of the several coupons would become equitably the owner of a proportion of the bond. The court therefore treated Mrs. Short, so far as she held coupons maturing before the decree of distribution and after the foreclosure decree, as equitably entitled to that part of the dividend due on the principal of the bond represented by the proportion which the par value of the coupons bore to the par value of the bond from which it was taken. We see nothing inequitable in this. The decree must be affirmed, with costs.