KENDALL v. DE FOREST et al.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

No. 130.

**1. Trustee—Appointment of Successor—Accounting—Parties.**

While it is not necessary to make annuitants parties to an action by a trustee to have a new trustee appointed in his place, yet if in such action he procured an accounting, and a decree approving payments made by him to residuary legatees which depleted the annuity fund, it is not conclusive against them.

**2. Same—Liability of Trustee.**

Where, after the death of some of the annuitants, the trustee appropriates part of the annuity fund for the benefit of residuary legatees, he does so at his peril; and, although acting in good faith, if the balance is insufficient to pay the annuitants, he must be deemed, in equity, to hold the amount still in his hands as part of the fund, and is liable to the annuitants therefor.

**3. Same—Payments Pursuant to Decree—Liability to Annuitants not Parties to Action.**

Where a trustee pays from an annuity fund a sum allowed as commissions, costs, and counsel fees in an action brought by him for an accounting, to which annuitants were not made parties so as to be bound thereby, he will be deemed, in equity, to hold the amount still in his hands as part of the fund.

**4. Successive Trustees—Liability—Estoppel.**

A decree permitting a trustee to resign and appointing his successor determined the proportion of the estate belonging to an annuity fund, and the proportion belonging to the residuary legatees' fund. The trustee, in turning over the estate to his successor, scheduled as belonging to the residuary legatees a larger proportion of the assets than that fixed by the decree, and the new trustee distributed the income on that basis. *Held* that, as between it and the old trustee, it could not escape liability to the annuitants on the principle of estoppel, as it was not justified in relying on the schedule, and, in a legal sense, could not have been misled thereby.

**5. Appeal—Stipulation—Re-examination of Testimony.**

Where, on an appeal from a decree fixing the liability of successive trustees, a stipulation is made, dispensing with the proofs taken before the master, and assenting to the accuracy of his computations, the court will not re-examine them to ascertain whether an error was made in apportioning restitution between the two trustees.

**6. Depletion of Estate—Action against Trustees—Parties.**

Where trustees erroneously pay to residuary legatees a larger proportion of the estate than they are entitled to, thereby depleting an annuity fund,

.., such legatees are not necessary parties defendant to an action by the annuitants against the trustees, as the annuitants are not obliged to follow the funds wrongfully devested, and the trustees are not deprived, by reason of any decree in such action, of any remedy they may have against the residuary legatees.

.. ,Appeal from the Circuit Court of the United States for the Southern District of New York.

Action by Sarah J. Kendall against Robert N. De Forest, individually and as trustee, etc., and the New York Life Insurance & Trust Company, to enforce payment of an annuity. From a decree in favor of complainant, defendants appealed.

Wm. T. Emmett, for appellant New York Life Insurance & Trust Co.

Robert Thorne, for appellant De Forest.

Hamilton Wallis, for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. By the will of Mrs. Andrews, who died in 1883, the executor was empowered to sell and convey the real estate of the testatrix, and became a trustee to receive the rents and income of the whole estate, and apply the same first to the payment of annuities aggregating $3,490 given by the will to several legatees, and thereafter to the payment of various residuary legatees. In 1885 the executor applied to the surrogate's court for a judicial settlement of his account, and had an accounting, and to that proceeding every person interested in the estate was a party. By the decree of the surrogate the executor was authorized to retain in his hands certain specified real and personal estate, or the investments arising from the conversion thereof into other assets, as a fund for producing the annuities. The decree also provided that out of the residue of the estate then remaining in his hands the sum of $65,376 be appropriated as the amount to be divided among the residuary legatees, and that the executor also pay to them annually the net income from the annuity fund in excess of the annuities. Until September, 1894, he administered the estate; collecting the income of the annuity fund, and discharging the annuities in full. In 1894 he commenced an action in the supreme court of the state of New York against the legatees named in the will, other than the annuitants, for a judicial settlement of his accounts as trustee. By the decree in that action his account was stated, he was permitted to resign his trust, the New York Life Insurance & Trust Company was appointed trustee in his place, and upon transferring to the new trustee the estate of the testatrix in his hands he was to be discharged from all liability arising from its management and his acts in relation thereto. In the accounting, as stated by the decree, it appeared that he had made payments to residuary legatees amounting to $30,000 out of the annuity fund constituted by the decree of the surrogate, and that there remained in his hands of that fund $122,211 invested in specified securities; and it also appeared that there remained in his hands of the residuary legatees'

fund $33,000 invested in specified securities. The decree approved and allowed the payments made to the residuary legatees out of the annuity fund, and directed the payment to them, out of the residuary legatees' fund, of $33,000. It also directed the payment of about $10,000 out of the annuity fund for trustee's commissions, and the costs and counsel fees of the action. September 9, 1894, the executor turned over to the new trustee about $3,600 in money, and securities of the face value of about $142,600. Thereafter the annuities were paid only in part. The complainant—one of the annuitants—brought the present action against the two trustees to enforce payment of her annuity. The other annuitants were made parties defendant to the action. The court below adjudged the substituted trustee liable to the annuitants to the extent of the income which it received or ought to have collected from the annuity fund, and adjudged the original trustee liable for the balance of the annuities. Each of the trustees has appealed from the decree.

Unless the original trustee was discharged by the decree of the supreme court from further liability to the annuitants, it is plain that he still remains liable to them for any breaches of duty in his dealings with the annuity fund. He remained their trustee until his successor in the trust was appointed, and, if he diverted any part of the fund consisting of the assets assigned to it for their benefit by the surrogate's decree, he is responsible to them to the extent of their losses. As they were not parties to the action, the decree of the supreme court was ineffectual to foreclose or affect their rights to an accounting. If it had been a proceeding merely for the appointment of a new trustee, the presence of the annuitants as parties would not have been essential, and might have been dispensed with at the discretion of the court; the appointment being always open to review upon the application of any person interested. In re Robinson, 37 N. Y. 261; Smith v. Trust Co., 154 N. Y. 333, 48 N. E. 550. But the action was one for an accounting, and those persons only were concluded by a decree purporting to adjudicate their rights that were afforded an opportunity to be heard. Williams v. Gibbes, 17 How. 239, 15 L. Ed. 135; In re Howard, 9 Wall. 175, 19 L. Ed. 634. It appears by the proofs that the assets of the annuity fund amounted to about $154,000. The fund was apparently ample to produce the annuities, and the trustee doubtless acted in good faith, and from commendable motives, in appropriating from it $30,000 for the benefit of the residuary legatees, as in the meantime some of the annuitants had died. But he acted at his peril in thus depleting the fund, and, as the decree of the supreme court does not protect him, he must be deemed, in equity, to hold the amount still in his hands, as part of the fund. The fund, while in his hands, was further depleted to the extent of the $10,000 paid from it, under the decree of the supreme court, for commissions, and the costs and counsel fees of the action; and for the same reason he must be deemed to have that amount still in his hands, as part of the fund. His responsibility in respect to the future management of the fund ceased upon the appointment of the new trustee, and, if he turned over to his successor the whole fund then in his hands, he remained

responsible to the annuitants only to the extent found to be due upon an accounting in respect to his past transactions.

The new trustee became responsible to the annuitants only to the extent of the producing capacity of the fund which came to its hands, unless it neglected to procure the delivery of assets by the original trustee which by the decree of the supreme court should have been turned over to it; but to that extent it became liable to respond to them, and if, in consequence of its own breaches of duty, the fund has not produced the income which should have been realized, it is accountable to them.

In turning over the assets to the new trustee, the original trustee scheduled, as belonging to the annuity fund, cash and securities to the amount of $80,798, and, as belonging to the residuary legatees' fund, cash and securities to the amount of $65,430. Among the latter, however, were a mortgage of $5,000, and others for $27,750, which were enumerated in the decree of the supreme court as belonging to the annuity fund. Thus, the new trustee received assets amounting to about $113,500 belonging to the annuity fund. It had notice what securities belonged to that fund, because the decree by which it was appointed trustee recited and described them. As the successor in the trust, it assumed the duty of protecting these assets, realizing the income, and paying the annuitants in full if the fund was sufficient, or pro rata if insufficient to produce enough to pay them in full. Instead of treating the $113,500 of assets as belonging to that fund, it treated only those as belonging to it which were recited in the schedule of the original trustee. Doubtless, it acted inadvertently in doing so; but, if it had compared the decree with the schedule, it could not have failed to observe that the Baier mortgage and the Wilckens mortgages belonged to the annuity fund, instead of the residuary legatees' fund. In paying as it did the income derived from these securities to the residuary legatees, it diverted the trust moneys of the annuitants. If the decree had not specifically informed the new trustee that these securities were part of the annuity fund, it might be entitled to insist that as between it and the original trustee, upon the principle of estoppel, they should be treated as belonging to the residuary legatees' fund. Being thus informed, however, it was not justified in relying upon the schedule, and, in a legal sense, could not have been misled by the recital. As between the two trustees, if the original trustee failed to turn over to the new trustee any part of the annuity fund specified in the decree of the supreme court, he is primarily liable for the income arising from that part.

We conclude that the court below correctly decided that the new trustee was liable to account to the annuitants for the income produced by the securities of the annuity fund which came to its hands, and that the original trustee was liable to account to them for any deficiency of income resulting from the depletion of the original annuity fund. We are not advised in the record of any departure in principle between the interlocutory decree and the final decree of the court below, and the stipulation dispensing with the proofs taken before the master, and assenting to the accuracy of his com-

putations, precludes us from re-examining them to ascertain whether an error has been made in apportioning restitution between the two trustees.

It is insisted for both appellants that the residuary legatees who have received part of the annuity fund should have been made parties defendant to the action. There is no merit in this contention. The annuitants were entitled to look to their trustees, and were under no obligation to follow the funds wrongfully diverted by them into the hands of other parties. If the trustees have a remedy against the residuary legatees, they are not deprived of it by the decree in the present action.

The decree is affirmed, with interest and costs to the appellee.