### UNITED STATES v. NORTHERN SECURITIES CO. et al.

(Circuit Court, S. D. Minnesota. April 19, 1904.)

**1. EQUITY—INTERVENTION AFTER DECREE—GROUNDS FOR GRANTING LEAVE.**

Applications for leave to intervene in a case after the entry of a final decree are very unusual. They are never granted as a matter of course, and, owing to the tendency of such applications to occasion delay and prolong the existing litigation, they ought not to be granted unless it is necessary to do so to preserve some right which cannot otherwise be protected, or to avoid some complication which is likely to arise.

**2. SAME.**

In a suit by the United States the Northern Securities Company was adjudged an illegal combination in restraint of interstate trade and commerce, in violation of the federal anti-trust law, on the ground that it was organized for the purpose of acquiring, holding, and voting a majority of the stock of each of two railroad companies whose lines were parallel and naturally competing, thus placing such roads under a common control and preventing competition. The railroad companies were also made parties defendant, and a decree was entered enjoining the Securities Company from voting the stock held by it in either company, and enjoining such companies from paying it dividends on such stock. Such decree was wholly prohibitory, and on appeal was in all things affirmed by the Supreme Court of the United States. *Held,* that a stockholder of the Northern Securities Company would not be granted leave to intervene after such affirmance for the purpose of obtaining further orders of the court directing the manner in which such company should distribute the stock of the railroad companies among its own stockholders, or to raise issues of fact as to the legality of a proposed method of distribution adopted by its directors, the rights of stockholders in that respect as between themselves being a matter which could properly be litigated and determined in independent suits, and the question whether the proposed action was illegal or in violation of the spirit and purpose of the decree being one which could only be raised in the instant suit by the United States.

**3. SAME—RIGHT OF INTERVENTION—PROPERTY IN CUSTODIA LEGIS.**

The suit having been one in personam for the sole purpose of preventing the accomplishment of the illegal purpose of the combination, and the

court having deliberately refrained from embodying in its decree any direction as to the disposition by the Northern Securities Company of the stock of the railroad companies which it held, such stock was not placed by the suit in custodia legis, so as to entitle a stockholder of the Securities Company to intervene for the protection of any right therein.

4. SAME—SUIT BY UNITED STATES—INTERVENTION BY PRIVATE INDIVIDUALS TO OBTAIN MODIFICATION OF DECREE.

Where the court, in a suit brought by the United States in behalf of the public to restrain an alleged combination in violation of the anti-trust law, deliberately refused to award a mandatory injunction prayed for in the bill, making the provisions of its decree prohibitory only, after such decree has been affirmed on appeal and accepted as satisfactory by the government the court will not permit an intervention by private individuals, over the objection of the Attorney General, for the purpose of obtaining a modification of the decree by incorporating therein the same mandatory provision which was refused to the complainant.

On petition by Edward H. Harriman and Winslow S. Pierce, as trustees, and the Oregon Short Line Railroad Company, for leave to intervene after decree. The Continental Securities Company was permitted to intervene for the purpose of objecting to the petition.

William D. Guthrie, R. S. Lovett, Maxwell Evarts, and John N. Baldwin, for petitioners.

Elihu Root, John G. Johnson, Frank B. Kellogg, and C. A. Severance, opposed.

Jas. Hamilton Lewis, for Continental Securities Co.

Before SANBORN, THAYER, VAN DEVANTER, and HOOK, Circuit Judges.

THAYER, Circuit Judge. This is an application by Edward H. Harriman and Winslow S. Pierce and the Oregon Short Line Railroad Company for leave to intervene pro interesse suo in the case of the United States v. The Northern Securities Company and others. The case in which they seek to intervene has already passed to a final decree, and the decree has been affirmed lately by the Supreme Court of the United States. 24 Sup. Ct. 436, 48 L. Ed. ——.

The petitioners recite as the grounds of their application that Harriman and Pierce, as trustees for the Oregon Short Line Railroad Company, are the registered owners of $82,491,871 in par value of the stock of the Northern Securities Company, which was originally issued to them in exchange for common and preferred stock of the Northern Pacific Railway Company; that since the decree was affirmed by the Supreme Court the directors of the Securities Company have formulated a scheme for the reduction of the capital stock of that company to the extent of 99 per cent., and are about to submit the scheme for approval to the stockholders of the company; that the plan so proposed contemplates that the stockholders of the Securities Company shall surrender 99 per cent. of the stock of that company which they respectively hold, each stockholder receiving in exchange $39.27 in stock of the Northern Pacific Railway Company and $30.17 in preferred stock of the Great Northern Railway Company, for each share of the Securities stock so surrendered; that the petitioners, Harriman and Pierce, are able to return the shares of stock in the Securities Company which they originally received from that company in exchange for Northern

Pacific stock, and as they verily believe that the proposed plan of distribution, if carried out, will vest a majority of the stock of the Great Northern and the Northern Pacific Railway Companies in the same individuals who co-operated in forming the Securities Company, and would continue the common management of the two competing railway companies and render the decree of this court ineffectual and defeat its true purpose.

Applications for leave to intervene in a case after the entry of a final decree are very unusual. They are never granted as a matter of course, and, owing to the tendency of such applications to occasion delay and prolong the existing litigation, they ought not to be granted unless it is necessary to do so to preserve some right which cannot otherwise be protected, or to avoid some complication that is liable to arise.

The principal ground, as it seems, on which the petitioners, Harriman and Pierce, base their application to intervene, is that it is necessary to the due enforcement that they should be admitted into the cause as parties and be allowed to raise further issues and obtain further orders. It is undoubtedly true that a supplemental bill may be filed in a case after a final decree for the purpose of fully executing it, when, after the decree is entered, some action has been taken or unforeseen events have occurred which will prevent its enforcement unless some further orders or directions are given. Root v. Woolworth, 150 U. S. 401–411, 14 Sup. Ct. 136, 37 L. Ed. 1123; Minnesota Company v. St. Paul Company, 2 Wall. 609, 17 L. Ed. 886. But we fail to perceive that further orders are necessary in the case at hand to insure the due execution of the decree according to its terms. The decree was wholly prohibitory. It enjoined the doing of certain threatened acts, and so long as these acts are not done it enforces itself, and no further action looking to its enforcement is deemed essential.

In its bill of complaint the United States prayed, among other things, for a mandatory injunction against the Securities Company requiring it to recall and cancel the certificates of stock which it had issued, and to surrender the stock of the two railway companies in exchange for which its stock had been issued. This prayer for relief was denied. The court doubted its power to compel stockholders of the Securities Company, who had not been served with process, and were not before the court otherwise than by representation (if, indeed, they were present by representation), to surrender stock which was in their possession, and to take other stock in lieu thereof. It accordingly contented itself with an order which rendered the stock of the two railway companies, so long as it was in the hands of the Securities Company, valueless for the purpose of carrying out the objects of the unlawful combination in restraint of interstate trade.

The government was satisfied with the relief obtained, and expresses itself as fully satisfied therewith at the present time. When the decree was entered it was assumed by the court that when the stock was thus rendered valueless in the hands of the Securities Company the stockholders of that company would be able, and likewise disposed, to make a disposition of the stock which, under all the circumstances of the case, would be fair and just, and would restore it to the markets of the world, where it would have some value, instead of being a worthless com-

modity. It was thought that the duty of thus disposing of it could be safely left to the stockholders of the Securities Company, and that, if any controversy arose in the discharge of this function, in view of the situation that had been created by the decree, it would be a controversy that would properly form the subject-matter of an independent suit between the parties immediately interested.

It is true that the decree contained a provision, in substance, that nothing therein contained should be construed as prohibiting the Securities Company from returning to the stockholders of the Northern Pacific Railway Company and the Great Northern Railway Company any and all shares of stock in either of said railway companies which the Northern Securities Company had acquired in exchange for its own stock, and that nothing therein contained should be construed as prohibiting the Securities Company from making such transfer of the stock aforesaid to such person or persons as had become owners of its own stock originally issued in exchange for the stock in the two railway companies; but this provision was purely permissive. It did not command that the stock should be so returned, or to exclude other methods of disposition of it that, in view of all the circumstances, might appear to be more equitable. The fact that the directors of the Securities Company have proposed to its stockholders a plan of distributing the stock of the two railway companies in a manner somewhat different from that which was tentatively suggested by the decree, but not commanded, cannot be regarded as a failure to obey the decree. It was said in argument that one purpose of the intervention is to have that clause of the decree which is now merely permissive made mandatory. But this would be to modify the provisions of a decree which has become final by affirmance, and make an order which we expressly and on full consideration declined to make when the decree was entered. This we must decline to do.

The application for leave to intervene contains the further suggestion, made on information and belief only, that the proposed plan of disposing of the stock of the Northern Pacific and Great Northern Railway Companies would result in leaving the control of the two railroads in the hands of persons who co-operated in forming the Securities Company, and that the petitioners should be permitted to intervene and obtain further order to prevent such a result. The Securities Company meets this suggestion by the presentation of affidavits and excerpts from its records which tend to show that the proposed plan of distribution will not have the effect last mentioned, but will lead to a very wide distribution of the stock, while the scheme which the petitioners have in view, if consummated by an intervention, will have the effect of placing the control of the Northern Pacific Railway Company in the hands of the owner of a parallel and competing road, to wit, the Union Pacific Railway Company. But the issues suggested by these affidavits and excerpts are disputed and debatable questions of fact which the parties would be entitled to litigate and with witnesses and evidence after leave to intervene had been granted, and we decline to consider them or the affidavits and excerpts which present them upon this motion. We consider and determine this application upon the petition for leave to intervene alone.

The United States is the complainant in this case. It is the con-
servator of the public welfare, and has a right to speak for the public.
According to well-established rules, the petitioners cannot intrude into
this litigation merely to protect the public interest or as amici curiæ, so
long as the government is present by its attorney general and expresses
its disapproval of such intrusion. This would be wresting from the
government that control over the litigation, so far as the public is
concerned, which it has a right to exercise. The petitioners can inter-
vene only for the protection of their own individual interests, and for
that purpose only in the event that they can obtain adequate protection
in no other way.

The United States, speaking by its attorney general, says that
it "neither admits nor denies the allegations of the petition, but ob-
jects to the proposed intervention. This case was heard before this
court on bill, answer, and testimony, and a final decree was entered
enjoining the defendants as therein recited. Upon appeal by defend-
ants to the Supreme Court of the United States the decree of this
court was affirmed in every particular, the effect of which was to end
and close the case. The United States stands on the decree as affirmed,
and submits that the court is only concerned to see that it is faithfully
observed by the defendants according to its terms." In view of this
declaration on the part of the United States it is to be presumed that
the government is disposed to permit the stockholders of the Securi-
ties Company to formulate some plan for the equitable distribution of
the stock of the two railway companies, if they can do so, which will not
be in violation of the law, feeling confident of its ability to dissolve
any future combination in restraint of interstate commerce should one
in fact result from any scheme that may be devised for the disposition
of the stock of the two companies, and preferring to challenge the
validity of any such combination by an independent bill, rather than
by any future proceedings in this case.

It was further contended in argument that the stock of the Northern
Pacific and Great Northern Railway Companies now standing in the
name of the Securities Company was placed in custodia legis by the
filing of the government bill in this case; that it has never been re-
leased from such custody, although a final decree has been entered;
and that on this ground the petitioners who assert a right to have par-
ticular shares of the Northern Pacific Railway Company returned to
them are entitled to intervene. This argument does not impress us
favorably. It may be conceded that, so long as property remains ac-
tually in judicial custody, any one asserting a right thereto or interest
therein may intervene, although the case in virtue of which judicial
custody was acquired has passed to a final decree. In re Howard, 9
Wall. 175, 184, 19 L. Ed. 634, and cases cited; Williams v. Morgan,
111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559. It is a well settled doc-
trine that when a court has acquired the custody of property persons
who assert an interest therein have a right to apply to the court for
relief, and, as a general rule, cannot obtain relief elsewhere. This
court, however, has never assumed the custody of the stock of the
Northern Pacific and Great Northern Companies, but has studiously
refrained from so doing. It did not assume to direct what should be

done with the stock in question when it enjoined the Securities Company from voting it and the railway companies from paying dividends thereon to the Securities Company. Nor was the bill which was filed by the government one that placed the stock in judicial custody when it was filed. It was proceeding strictly in personam, which prayed the court to enjoin the use of the stock for the accomplishment of certain unlawful objects, and the relief granted was confined to that end. The intervention cannot be allowed on the ground last stated.

Our conclusion is that the petitioners should not be allowed to intervene and import into the case new issues to be tried. The due enforcement of the decree does not necessitate such action, and if it so happens that the decree of this court in favor of the government creates a situation which shall give rise to controversies between stockholders of the Securities Company as to how the holdings of that company in the two railway companies ought to be distributed, or what should be done with such holdings, these are questions which can be settled among the stockholders themselves, who are more immediately concerned in these questions, and according to these principles of law and equity which any court having general common law and equity powers is competent to enforce.

Leave to intervene is denied.